

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| EL Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Amaury Díaz Medina y<br>Gerardo Bonano Pérez<br><br>Recurridos | Certiorari<br><br>2009 TSPR 138<br><br>176 DPR \_\_\_\_ |

Número del Caso: CC-2005-632

Fecha: 27 de agosto de 2009

Tribunal de Apelaciones:

      Región Judicial de Fajardo Panel XI

Juez Ponente:

      Hon. Yvonne Feliciano Acevedo

Oficina del Procurador General:

      Lcdo. Salvador Antonetti Stutts

Abogados de la Parte Recurrida:

      Lcda. Niza Meléndez Winandy
      Lcdo. Héctor Jiménez Casillas

Materia: Artículo 401

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del pr oceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio p úblico a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

      v.

Amaury Díaz Medina,
Gerardo Bonano Pérez

    Recurridos

Certiorari

CC-2005-632

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

San Juan, Puerto Rico, a 27 de agosto de 2009.

El presente recurso otorga a este Tribunal la oportunidad de resolver si el sometimiento de un equipaje a un examen de olfato canino realizado con el propósito de detectar sustancias controladas, por un can entrenado para tal fin, constituye un registro al amparo de la Sección 10 del Artículo II de la Constitución de Puerto Rico. Luego de haber realizado un detenido examen de la controversia presentada ante nos, resolvemos que el examen de olfato canino realizado sobre el equipaje de la parte recurrida no fue un registro en sentido constitucional. A su vez, resolvemos que el registro ulterior a la marca positiva del can fue razonable por tratarse de una situación de necesidad especial para el Estado, toda

vez que los agentes del orden público tenían una sospecha individualizada razonable de que el contenido del equipaje registrado tenía narcóticos. Al así colegir, se armonizan los intereses en pugna en una controversia de esta índole, a saber: la protección constitucional contra registros y allanamientos irrazonables como medida preventiva para proteger el derecho a la intimidad *versus* el interés del Estado en combatir la criminalidad.

## I.

Expondremos brevemente los hechos esenciales que dieron génesis a la controversia que hoy toca resolver.

El Ministerio Público presentó acusaciones contra los recurridos Amaury Díaz Medina y Gerardo Bonano Pérez por violación al Art. 401 de la Ley Núm. 4 de 23 de junio de 1974, según enmendada, conocida como "Ley de Sustancias Controladas de Puerto Rico", 24 L.P.R.A. sec. 2401. Se les acusó por posesión de catorce kilos de cocaína con la intención de distribuir la droga.

Previo a la celebración del juicio en su fondo, Amaury Díaz Medina, en adelante, Díaz Medina, presentó una "Moción Solicitando la Supresión de Evidencia". En el escrito, Díaz Medina solicitó la supresión de la evidencia incautada alegando que la misma había sido ocupada ilegalmente por no mediar orden para el registro supuestamente realizado. Evaluado el petitorio, el Tribunal de Primera Instancia celebró una vista de supresión de evidencia en la cual compareció como único testigo el agente Nelson Rosado

Cintrón, adscrito a la División de Drogas y Narcóticos del Municipio de Fajardo.

El agente Rosado Cintrón declaró que, previo a la intervención con los acusados, su Supervisor había recibido varias confidencias por vía telefónica respecto a un cargamento de drogas que Aduana Federal había recogido al norte de la Isla del Municipio de Culebra. Luego de corroborar dicha información con un sargento del *Task Force* de Aduana Federal, el declarante se trasladó a Culebra el 6 de diciembre de 2003. Una vez el agente Rosado Cintrón llegó a Culebra, entrevistó a tres personas que le informaron que parte del cargamento había sido recogido por el recurrido Gerardo Bonano Pérez, en adelante, Bonano Pérez, y otro individuo en una embarcación. A su vez, le informaron que, por el tamaño de la embarcación (incapaz de acomodar todo el cargamento), Bonano Pérez y su acompañante tuvieron que dejar en el agua, para recogerlo posteriormente, parte del cargamento, siendo incautado éste por agentes federales.

El declarante testificó que ese mismo día mientras se encontraba en Bayamón haciendo gestiones para ingresar a una persona en una facilidad correccional, recibió por teléfono otra confidencia en la que le indicaron que Díaz Medina había transportado de Culebra a Fajardo seis kilos de cocaína. El agente Rosado Cintrón declaró que conocía a Díaz Medina porque anteriormente había tenido que arrestar a éste, en un caso relacionado a sustancias controladas. Asimismo, el agente Rosado Cintrón atestó que el confidente le notificó

que Díaz Medina había realizado otros viajes similares en esos días para transportar cocaína que tenían almacenada en un lugar en Culebra.

El agente Rosado Cintrón declaró que, siguiendo instrucciones de su Supervisor, se trasladó a Culebra el 11 de diciembre de 2003 donde entrevistó a varias personas que confirmaron las confidencias previas. Indicó que al día siguiente pudo observar a Bonano Pérez llegar al lugar y recibir dinero de una de dos personas que se encontraban realizando una transacción de drogas. Alegó que Bonano Pérez llegó al lugar en una camioneta *pick up* modelo Ford 150 color negra y marrón, mientras que Díaz Medina se presentó en un vehículo Toyota. Continuó el declarante atestando que luego de dialogar, Bonano Pérez sacó de la parte de atrás de la Ford dos paquetes con cinta adhesiva color gris y se los entregó a Díaz Medina, que los colocó en un bulto color azul y se marchó del lugar.

Al observar lo acaecido, el Agente Rosado Cintrón siguió a Díaz Medina hasta Villa Flamenco donde observó a éste estacionarse al lado de una casa ubicada frente al aeropuerto de Culebra. Declaró que Díaz Medina se bajó del vehículo Toyota y sacó del baúl el bulto color azul llevándolo dentro de la casa.[1] Al informar lo sucedido a su Supervisor, éste le ordenó preparar una Declaración Jurada a fin de obtener una orden de registro y allanamiento de la mencionada residencia.

---

[1] El agente Rosado Cintrón aseguró que, por su experiencia y la forma de la envoltura, los paquetes que observó contenían sustancias controladas.

Así las cosas, el declarante relató que el 13 de diciembre de 2003 salió de Culebra y al llegar a la División de Drogas recibió una confidencia telefónica de que los acusados se hallaban en el aeropuerto de Culebra y se disponían a viajar hasta Fajardo con tres bultos llenos de cocaína. Según el agente Rosado Cintrón, a los quince minutos lo volvieron a llamar para informarle que los acusados habían conseguido un vuelo y se disponían a abordar el avión. Además, el confidente supuestamente describió la vestimenta que llevaban puesta los recurridos.

Continuó su testimonio atestando que realizadas las gestiones con su supervisor, éste le indicó que consiguiera al agente Daniel Marín, manejador de un perro de la Unidad Canina. Al llegar a la división, el agente Daniel Marín fue informado de las confidencias y salió junto al agente Rosado Cintrón hacia el aeropuerto llevando consigo un can. El agente Rosado Cintrón declaró que una vez llegó al aeropuerto, observó a Díaz Medina con un bulto azul oscuro y una bolsa blanca de supermercado. Testificó que tan pronto Díaz Medina vio al agente acercarse, **soltó** el bulto azul y lo colocó pegado a una pared de la oficina de Aduana Federal, previo a sentarse en el primer asiento de una hilera de asientos en el aeropuerto. Según la declaración del agente, éste le pidió a Díaz Medina que se levantara pero no le hizo caso. Declaró que mientras tanto de frente hacia él venía caminando Bonano Pérez con dos bultos en las manos. El agente Rosado Cintrón testificó que Bonano Pérez **tiró** uno de

los bultos junto al bulto de Díaz Medina (pegado a la pared) y el otro se lo quedo consigo. El agente Rosado Cintrón procedió a preguntarle a Bonano Pérez si éste le daba permiso para registrar el bulto que traía, a lo que éste contestó que no tenía ningún problema. De esta forma, Bonano Pérez colocó el bulto que tenía consigo al lado del asiento donde se encontraba sentado Díaz Medina.

El agente Rosado Cintrón comenzó a registrar el bulto de Bonano Pérez y encontrándose en dicho ejercicio, el agente Daniel Marín llegó con el can llamado Pirata, dirigiéndose donde estaban los bultos que Bonano Pérez y Díaz Medina habían soltado en el piso. El agente Marín le dio una instrucción al can, lo haló y el perro siguió olfateando. El perro volvió a los bultos marcando positivo.

Esto ocasionó que el agente Rosado Cintrón soltara el bulto que se encontraba en el asiento y procediera a registrar los que se encontraban en el piso. El agente declaró que al abrir el bulto que había soltado Díaz Medina, encontró debajo de una ropa el primer kilo de cocaína que estaba envuelto en cinta adhesiva color gris.[2] Después de la identificación de las sustancias controladas, el agente Rosado Cintrón declaró que puso bajo arresto a Díaz Medina y Bonano Pérez y les leyó las advertencias legales. Finalizó su testimonio aclarando que en la División de Drogas se hizo un registro más profundo encontrando siete kilos de cocaína en cada uno de los dos bultos incautados.

---

[2] Según el agente Rosado Cintrón, la envoltura de los paquetes era similar a la de los paquetes que había identificado en Culebra.

El Tribunal de Primera Instancia declaró con lugar la "Moción de Supresión de Evidencia". Expresó que no existían los motivos fundados para realizar un registro sin orden judicial previa. Inconforme, el Procurador General, en representación del Pueblo de Puerto Rico, acudió al Tribunal de Apelaciones.

El foro apelativo denegó expedir el auto de *certiorari* solicitado por discernir que el Tribunal de Primera Instancia no había incidido al suprimir la evidencia. Entendió el tribunal *a quo* que el registro realizado por el agente Rosado Cintrón había sido irrazonable. Inconforme, el Procurador General acude ante nos.

Ante este Foro, el Procurador General plantea, *inter alia*, que incidió el foro apelativo al resolver el caso de autos aplicando la figura del registro incidental a un arresto, cuando procedía resolver que someter los bultos al olfato de un can no constituye un registro. Sostiene, a su vez, que es de aplicación la norma de evidencia a plena vista u olfato, por lo que no era necesaria la orden judicial previa para el registro de los bultos. Finalmente, plantea que dicho registro motivó el arresto de los recurridos conforme la Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap II.

*A contrario sensu*, los recurridos sostienen que la intervención estatal configuró un registro irrazonable porque se llevo a cabo sin previa orden judicial, en ausencia de motivos fundados suficientes, por lo que arguyen que los

foros inferiores no incidieron al suprimir la evidencia incautada.

Vista la petición de *certiorari*, acordamos expedir. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

La controversia en el caso de autos comporta un carácter dual. En primer lugar, nos toca resolver si el examen de olfato canino sobre los bultos de los recurridos Díaz Medina y Bonano Pérez es un registro bajo el palio de nuestra Constitución. En segundo lugar, y consustancial con lo primero, debemos determinar si la intervención posterior a la marca positiva del can es un registro en sentido constitucional y de serlo, si fue razonable, pese haberse llevado a cabo sin una orden judicial previa. Conforme hemos mencionado, la respuesta a la primera interrogante es en la negativa y la de la segunda es en la afirmativa.

Previo a entrar en el análisis de las controversias planteadas, debemos enfatizar que este caso vuelve a protagonizar la convergencia entre dos intereses primordiales en nuestra sociedad que suelen ser asiduamente antagónicos. Nos referimos a la garantía individual contra registros y allanamientos irrazonables[3] *vis a vis* el interés del Estado en hacerle frente a la criminalidad en busca de una mejor calidad de vida para sus ciudadanos. Tenemos presente que al

---

[3] Enmda. IV, Const. EE.UU., Tomo 1; Art. II, sec. 10, Const. de Puerto Rico, L.P.R.A., Tomo 1.

realizar la ponderación, es necesario armonizar los intereses envueltos sin enajenarnos de los valores o principios latentes en nuestra sociedad y al mismo tiempo evitar convertirnos en intérpretes propiciadores de óbices que impidan el deber del Estado de luchar contra el crimen. Después de todo, como ya hemos expresado: "[e]n Puerto Rico como regla general, la expectativa de intimidad que un individuo pueda tener en circunstancias relacionadas directamente con la comisión de un acto criminal es limitada. Así lo determinaron quienes redactaron nuestra Constitución".[4] *Pueblo v. Santiago Feliciano*, 139 D.P.R. 361, 390 (1995); Véanse, además, *Pueblo v. Soto Soto*, res. en 22 de mayo de 2006, 168 D.P.R. ___ (2006), 2006 T.S.P.R. 87, 2006 J.T.S. 96; *Pueblo v. Colón Rafucci*, 139 D.P.R. 959, 966-67 (1996).

---

[4] La Comisión de la Carta de Derechos de la Constituyente explicó la Sección 10, que trata sobre la protección contra registros y allanamientos irrazonables, de la siguiente manera:

"La inviolabilidad de la persona se extiende a todo lo que es necesario para el desarrollo y expresión de la misma. El hogar, los muebles y utensilios, los libros y papeles poseídos por un ciudadano son como una prolongación de su persona, pues constituyen el ámbito en que ésta se ha hecho y se mantiene. Toda intromisión sin su permiso en este círculo privado equivale para todo hombre a una violación de su personalidad. Lo mismo acontece con los medios en que se expresa su intimidad y que reserva tan sólo para algunos: su correspondencia, sus manifestaciones espontáneas a través de los modernos medios mecánicos de comunicación. La lesión de la intimidad es en este sentido el más penoso ataque a los derechos fundamentales de la persona.

Sin embargo, los mismos medios y propiedades que sirven para el desarrollo y el sostén de la persona pueden ser instrumentos de delito o resultado de su comisión. **En estos casos detenerse ante esas fronteras de la personalidad equivaldría a la protección indebida del delito y del delincuente.** En esa colisión de lo privado y lo público, la solución se entrega, con todas las garantías, a la autoridad judicial encargada de perseguir y sancionar las transgresiones de la ley. **Las garantías personales frente al arresto, el registro, la incautación y el allanamiento tienen su límite en la conducta criminal.**" (Énfasis nuestro) Diario de Sesiones de la Convención Constituyente, págs. 2567-2568.

**III**.

Tanto la Cuarta Enmienda de la Constitución de Estados Unidos como la Constitución de Puerto Rico protegen el derecho del pueblo contra registros, incautaciones y allanamientos irrazonables que puedan afectar sus personas, casas, papeles y efectos.[5] Véase, Olga Elena Resumil de Sanfilippo, *Práctica Jurídica de Puerto Rico, Derecho Procesal Penal*, Equity Pub., Orford, NH, T. I, Vol. I, 1990, pág. 203.

La etiología de ambos preceptos constitucionales es proteger el derecho a la intimidad y dignidad del individuo frente a actuaciones arbitrarias e irrazonables del Estado. *Pueblo v. Loubriel Suazo*, 158 D.P.R. 371 (2003); *Pueblo v. Yip Berríos*, 142 D.P.R. 386 (1997); *Pueblo v. Santiago Alicea*, 138 D.P.R. 230 (1995); *Pueblo v. Ramos Santos*, 132 D.P.R. 363 (1992). Véase, Ernesto L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unídos*, 1ra ed., Colombia, Forum Pub., 1991, T. I, Vol. I, pág. 283.

Sabido es que la mencionada garantía constitucional protege fundamentalmente a la persona y no a los lugares, y para que esta garantía se active es necesario determinar si existe un interés personal del individuo sobre el lugar u objeto allanado, incautado o registrado de modo que exista una expectativa razonable de intimidad. *Pueblo v. Loubriel*

---

[5] Nuestra Constitución, en su Art. II, Sec. 10 reconoce el derecho de la ciudadanía "a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables", salvo autorización judicial, "cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse. Evidencia obtenida en violación de esta sección será inadmisible en los tribunales".

*Suazo*, *supra*; *E.L.A. v. P.R. Tel. Co.*, 114 D.P.R. 394 (1983). Además, la protección contra registros irrazonables se acciona solamente cuando los agentes gubernamentales realizan un "registro" en sentido constitucional. Esto ocurre cuando la persona que alega la violación, alberga subjetivamente una expectativa legítima de intimidad que la sociedad reconoce como razonable. *Pueblo v. González*, 167 D.P.R. 350 (2006). La cuestión central es si la persona tiene un derecho razonable a abrigar, donde sea, dentro de las circunstancias del caso específico, la expectativa de que su intimidad se respete. *Íd; Pueblo v. Soto Soto*, *supra*; *Pueblo v. Bonilla*, 149 D.P.R. 318 (1999); *Pueblo en Interés del Menor N.O.R.*, 136 D.P.R. 949 (1994); *Kyllo v. United States*, 533 U.S. 27 (2001); *Katz v. United States*, 389 U.S. 347 (1967).

Como consecuencia de este principio, se ha reconocido que ciertas actividades gubernamentales no activan la protección constitucional contra registros irrazonables, ya que no existe expectativa razonable de intimidad sobre la materia investigada. Así, por ejemplo, no se activa la cláusula constitucional cuando la evidencia es ocupada en un "campo abierto" o cuando la evidencia ocupada ha sido abandonada. *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139 (1985). Véase, Ernesto L. Chiesa, *op cit.*, Vol. 1, pág. 347. Tampoco se activa la protección constitucional cuando se utilizan binoculares para observar el campo abierto frente a una residencia. *Pueblo v. Soto Soto*, *supra*.

La determinación de la existencia de una expectativa razonable de intimidad que active la protección de la cláusula constitucional es una cuestión de umbral a ser determinada previo a entrar a considerar si la intervención gubernamental fue razonable. *Pueblo v. González*, *supra*. Una vez se determina la configuración de un registro por parte del Estado, entonces el siguiente peldaño consiste en realizar un balance de intereses entre dicha expectativa y los intereses estatales que hayan motivado la actuación estatal. *Pueblo v. Cedeño Lacaustra*, 157 D.P.R. 743, 788 (2002); *Pueblo v. Yip Berríos*, *supra; Pueblo v. Dolce*, 105 D.P.R. 422, 434-35 (1976).

En síntesis, lo primero que se debe auscultar y analizar es si en esencia ha ocurrido o no un registro por parte del Estado para hacer extensiva la protección constitucional aludida. Si la conclusión del análisis es que no ha habido un registro, vano sería aplicar la doctrina de balance de intereses puesto que no se activaría la garantía constitucional contra registros y allanamientos irrazonables.

En lo relativo al equipaje de una persona, se ha sostenido y reconocido que un individuo alberga una expectativa razonable de intimidad sobre este, aunque dicha expectativa sea menor que la que se puede tener en el hogar.[6] *Robbins v. California*, 453 U.S. 420 (1981); *Arkansas v.*

---

[6] En *Kyllo v. United States*, *supra*, se recalcó que el hogar es un área donde el reconocimiento a la expectativa razonable a la intimidad tiene raíces profundas en el Derecho Común.

*Sanders*, 442 U.S. 753 (1979); *United States v. Chadwick*, 433 U.S. 1 (1977).

Por otro lado, para hacer asequible la protección constitucional contra registros y allanamientos irrazonables, la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, funge como vehículo procesal que permite la supresión de evidencia obtenida en contravención con un registro sin orden judicial previa. Un registro sin orden judicial previa se presume irrazonable e inválido y solamente podría ser considerado razonable si concurren las circunstancias que la jurisprudencia ha reconocido por vía de excepción. *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770, 775-776 (1982); *Pueblo v. Dolce*, *supra*.[7]

**IV.**

**A.**

De entrada, y a la luz de la normativa reseñada, en el caso de autos debemos determinar si en efecto el examen de olfato canino sobre el equipaje de una persona constituye un registro en sentido constitucional. Como ya señalamos, tal determinación es una cuestión de umbral, necesaria para saber si hay que realizar un balance de intereses entre la expectativa a la intimidad que se albergue sobre el contenido del equipaje y el objetivo del Estado. Por eso, establecer lo contrario (que el examen de olfato canino no es un registro),

---

[7] Entre las excepciones reconocidas a un registro sin orden judicial se encuentran: registro incidental a un arresto legal, evidencia a plena vista, y consentimiento por parte del ciudadano objeto del registro. Véanse, *Pueblo v. Rosario Igartúa*, 129 D.P.R. 1055 (1992); *Pueblo v. Acevedo Escobar*, *supra*.

hace inmaterial realizar el balance de intereses porque no habría expectativa de intimidad que proteger.

Desde hace más de veinticinco años, la jurisprudencia federal ha reconocido y sigue afirmando que el examen de olfato canino sobre el equipaje o bultos de una persona **no constituye un registro** que amerite la activación de la protección constitucional contra registros y allanamientos irrazonables.[8] Esta normativa tuvo su albor en el caso de *Place v. United States*, *infra*.

En este caso, Raymond J. Place se encontraba haciendo turno para comprar un pasaje en el aeropuerto internacional de Miami, con destino a Nueva York. Su comportamiento levantó sospechas a unos agentes del orden público, los que, posteriormente, mientras Place se dirigía a la puerta de su avión le requirieron su boleto e identificación. Place le mostró lo solicitado y consintió a que registraran sus bultos pero por razón de que su vuelo estaba a punto de partir, los agentes no hicieron el registro. Una vez llegó a Nueva York, agentes del *Drug Enforcement Administration* (DEA) lo estaban esperando al haber sido notificados desde Florida (por los primeros agentes) que la dirección provista por Place para comprar su boleto y la que llevaba el equipaje no existían y que, a su vez, el teléfono que había informado como suyo, pertenecía a una tercera dirección. Place se negó a consentir el registro de sus bultos por los agentes. Los

---

[8] *Place v. United States*, 462 U.S. 696 (1983); *City of Indianapolis v. Edmond*, 531 U.S. 32 (2000); *Illinois v. Caballes*, 543 U.S. 405 (2005).

agentes retuvieron los bultos, transcurriendo noventa minutos hasta que se le realizó y completó un examen de olfato canino que arrojó positivo. Finalmente obtuvieron una orden para registrarlos, encontrando cocaína. Así las cosas, Place fue arrestado. *Íd.*

En la evaluación del caso, el Tribunal Supremo Federal palmariamente reafirmó que todo ciudadano tiene una expectativa razonable de intimidad sobre su equipaje protegida por la Cuarta Enmienda. *Íd,* 707; Véase, *United States v. Chadwick*, *supra*, pág. 7 (1977). Empero, también sostuvo en lo pertinente: 1) que el olfato canino por un perro entrenado para detectar sustancias controladas no requiere abrir el equipaje; 2) que tampoco expone cosas que no son contrabando por lo que éstas permanecerán ocultas de la vista del público; 3) que la manera en que la información es recopilada por esta técnica investigativa es menos intrusiva que un registro usual; 4) que el olfato solamente revela la presencia o no de narcóticos (contrabando) y por ello la información recibida es limitada; 5) que este descubrimiento limitado evita que el propietario del equipaje sea objeto de vergüenza o inconvenientes que pueden ocasionar otros métodos investigativos; y 6) que en esencia el examen de olfato canino es una técnica investigativa *sui generis* y que por tales fundamentos la exposición del equipaje, localizado en área pública y por un perro entrenado, no es un

registro a la luz de la Cuarta Enmienda. *Place v. United States*, *supra*, pág. 707.[9]

Un año después, en *United States v. Jacobsen*, 466 U.S. 109 (1984), el Tribunal Supremo Federal resolvió, en concordancia con lo resuelto en *Place v. United States*, *supra*, que la intervención de los agentes del orden público que no compromete ningún interés legítimo de privacidad, no es un registro conforme la Cuarta Enmienda. Por lo tanto, el interés que pueda tener una persona en poseer contrabando o sustancias controladas no se considera como legítimo. Es decir, la acción gubernamental que solamente revela posesión de contrabando, no compromete ningún interés legítimo de privacidad. Por eso, la expectativa que una persona en particular pueda albergar con respecto a que algunas cosas (como los narcóticos) no lleguen al conocimiento de los agentes del orden público, no es sinónimo al interés en la privacidad que la sociedad está preparada para reconocer como razonable. *Íd.*, págs. 122-123.

Posteriormente, el máximo Foro Federal ratificó lo sostenido en *Place v. United States*, *supra*, en los casos de *Indianapolis v. Edmond*, *supra*, e *Illinois v. Caballes*, *supra*, extendiendo su aplicación al contexto de los automóviles que

---

[9] El Tribunal Supremo Federal determinó, a su vez, que detener el equipaje de una persona solamente sería razonable si existe sospecha razonable de que el pasajero tiene sustancias controladas en dicho equipaje. Además, el Tribunal apuntó que la detención del equipaje debía ser breve. Tales pronunciamientos ponen de manifiesto la necesidad de sospecha razonable para detener el equipaje de una persona con el objeto de someterlo a un examen de olfato canino. Por consiguiente, si no ocurre dicha detención, el equipaje puede ser sometido al examen de olfato canino sin necesidad de sospecha razonable previa. Nótese, que en el caso de autos, ni siquiera hubo detención de equipaje. El examen de olfato canino se realizó sobre los bultos que los coacusados habían soltado en el piso del aeropuerto.

son detenidos legalmente. En el primero señaló que igual a *Place v. United States*, *supra*, el examen de olfato canino en el exterior de un automóvil no requiere entrar al carro y no está diseñado para revelar ninguna información excepto la presencia o ausencia de narcóticos y que el olfato de un can que solamente camina alrededor de un carro es mucho menos intrusivo que un registro usual. En el segundo, *in pari materia,* el tribunal tuvo la oportunidad de resolver si la Cuarta Enmienda requería sospecha razonable para justificar la utilización de un perro con el propósito de olfatear un vehículo durante una detención vehicular válida. El Supremo Federal sostuvo contundentemente, *inter alia*, que el examen de olfato canino conducido durante una detención vehicular válida que no revela información alguna excepto la ubicación de alguna sustancia que ninguna persona tiene derecho a poseer,[10] no viola la Cuarta Enmienda, por lo que no se necesita sospecha razonable para realizar dicho examen. *Illinois v. Caballes*, *supra*, págs. 408-410.[11]

---

[10] Nótese que tal razonamiento es cónsono con lo resuelto en *United States v. Jacobsen*, *supra* y así lo entendió el máximo Foro Federal en *Illinois v. Caballes*, *supra*, al citar con aprobación al primero. La lógica es simple y carece de cualquier pretensión distorsionada: si no existe expectativa legítima de intimidad sobre el contrabando o los narcóticos, por la misma razón, un examen de olfato canino dirigido únicamente a identificar si el equipaje de una persona tiene o no contrabando, tampoco soslaya la expectativa razonable de intimidad que pueda albergar una persona, puesto que dicha expectativa, en ese contexto particular, no se reconoce.

[11] Véase, *United States v. Lovell*, 849 F.2d 910 (5to Cir. 1988). Véase, además, *United States v. $191,910.00 In U.S. Currency*, 16 F.3d 1051 (9no Cir. 1994). Este caso valida la utilización del olfato canino para examinar equipaje en ausencia o no de motivos fundados. Establece que si existe sospecha razonable de que el viajero lleva droga consigo, los agentes deben tener un can en el aeropuerto o cerca de éste, esperando para oler el equipaje con el propósito de que la detención del equipaje sea breve y razonable. Sin embargo, si no existe sospecha razonable, los agentes del orden público no tienen que tener un can esperando al viajero en el aeropuerto o cerca del mismo.

Se ha interpretado que al aplicar el caso de *Place v. United States*, *supra*, es irrelevante si el olfato positivo del can ocurre en un aeropuerto o si el oficial del orden público logra detectar contrabando a plena vista. *A contrario sensu*, lo realmente determinante es si la persona que observa o el can que olfatea, están legalmente presentes cuando sus respectivos sentidos detectan evidencia incriminatoria. *United States v. Esquilin*, 208 F.3d 315, 318 (1er Cir. 2000); *United States v. Reed*, 141 F.3d 644, 649 (6to Cir. 1998).

Incluso, antes y después de *Place v. United States*, *supra*, los tribunales federales han resuelto que el olfato de un can sobre el equipaje de una persona no constituye un registro porque la expectativa razonable de intimidad no se extiende al espacio de aire que rodea a los mismos. *U.S. v. Garcia*, 42 F.3d 604, 150 A.L.R. Fed 719 (10mo Cir. 1994); *U. S. v. Goldstein*, 635 F.2d 356 (5to Cir. 1981); *U. S. v. Fulero*, 498 F.2d 748 (D.C. Cir. 1974). También, se ha interpretado que la naturaleza limitada y discriminatoria del olfato canino no constituye un registro bajo la Cuarta Enmienda de la Constitución Federal. *Jennings v. Joshua Indep. Sch. Dist.*, 877 F.2d 313, 316 (5to Cir. 1989). En síntesis, las cortes federales, han sostenido que el examen de olfato canino sobre los bultos de las personas, automóviles, pertenencias de los estudiantes en una escuela, entre otros, no son un registro al amparo de la Cuarta Enmienda. Véase, *U.S. v. Quoc Viet Hoang*, 486 F.3d 1156 (9no Cir. 2007); *U.S. v. Carpenter*, 406 F.3d 915 (7mo Cir. 2005);

*Doran v. Contoocook Valley Sch. Dist.*, 2009 DNH 32 (2009)[12].

Como bien señala el comentarista John Wesley Hall, las cortes federales y estatales han permitido el examen de olfato canino de manera indiscriminada tanto en los equipajes como en los automóviles. J.W. Hall, *Search and Seizure*, 3ra ed., Virginia, Lexis Publ. Co., Vol. I, pág. 674. Véanse, *U.S. v. Quoc Viet Hoang*, *supra*; *U.S. v. Olivera-Mendez*, 484 F.3d 505 (8vo Cir. 2007); *U.S. v. Carpenter*, *supra*; *U.S. v. Morgan*, 270 F.3d 625 (8vo Cir. 2001); *United States v. Ward*, 144 F.3d 1024, 1031 (7mo Cir. 1998); *U.S. v. De Los Santos Ferrer*, 999 F.2d 7 (1er Cir. 1993); *United States v. Turpin*, 920 F.2d 1377, 1385 (8vo Cir. 1990); *State v. Wallace*, 372 Md. 137, 812 A.2d 291 (2002); *People v. Ortega*, 34 P.3d 986 (Colo.

---

[12] En *Doran v. Contoocook Valley Sch. Dist.*, 2009 D.N.H. 32 (2009), la corte de distrito federal en New Hampshire ratificó lo resuelto por la jurisprudencia federal extendiéndolo a los bultos de estudiantes en una escuela donde los agentes se presentaron con los canes, como parte de un plan llevado a cabo para lidiar con un problema de drogas recurrente en dicha escuela. *In extenso*, el Tribunal expresó:

"Courts across this country have taken up the issue of drug detection dog sniffs in a variety of circumstances. The existing precedents, those binding on this court and those merely persuasive, leave little doubt that the mere use of trained drug dogs on school grounds to sniff students personal items does not qualify as a search within the meaning of the Fourth Amendment. When confronted with cases involving dog sniffs for illegal drugs in other contexts, the United States Supreme Court has repeatedly concluded that the Fourth Amendment is not implicated by such searches. See, e.g., *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005) ("[T]he use of a well-trained narcotics-detection canine – one that 'does not expose noncontraband items that otherwise would remain hidden from public view,' during a lawful traffic stop, generally does not implicate legitimate privacy interests...Any intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement." (internal citations omitted)); *City of Indianapolis v. Edmond*, 531 U.S. 32, 40, 121 S. Ct. 447, 148 L. Ed. 2d 333 (2000) ("It is well established that a vehicle stop at a highway checkpoint effectuates a seizure within the meaning of the Fourth Amendment... a sniff by a dog that simply walks around a car is 'much less intrusive than a typical search.'"); *United States v. Place*, 462 U.S. 696, 707, 103 S. Ct. 2637, 77 L. Ed. 2d 110 ("[W]e conclude that the particular course of investigation that the agents intended to pursue here – exposure of respondent's luggage, which was located in a public place, to a trained canine – did not constitute a 'search' within the meaning of the Fourth Amendment.")."

2001); *State v. Scheetz*, 950 P.2d 722 (Mont. 1997); State v. Martínez, 925 P. 2d 1125 (Idaho. 1996).

A la luz de la diáfana normativa reseñada, este Tribunal entiende que *Place v. United States*, *supra* y su correlativa interpretación, deben ser adoptados en nuestra jurisdicción. La afinidad entre el caso de autos y el de *Place v. United States*, *supra*, es manifiesta e innegable. Así por ejemplo, el registro realizado en ambos casos no fue producto de una inspección rutinaria sino de un proceso investigativo. En el caso de autos al igual que en *Place v. United States*, *supra*, el examen de olfato canino sobre el equipaje se condujo porque había motivos fundados para creer que el contenido del mismo tenía narcóticos. En *Place v. United States*, *supra*, el examen de olfato canino se basó en la sospecha de los agentes surgida a raíz del encuentro e interrogatorio con el acusado y su comportamiento. Es decir, lo que motivó a los agentes a realizar el examen de olfato canino sobre el equipaje de Raymond J. Place fue: 1) la información falsa y contradictoria que el acusado había proporcionado a las autoridades cuando le interrogaron; y 2) el *demeanor* del acusado en el aeropuerto. En el caso de autos, los motivos para realizar el examen canino fueron las confidencias que el Agente Rosado Cintrón recibió y corroboró. Añádase, que en ambos casos el examen de olfato canino se llevo a cabo en un aeropuerto, que es un lugar público donde los oficiales y el can tenían derecho a estar. Además, fue en ese mismo lugar donde el can marcó positivo a sustancias controladas sobre

las que, como hemos discutido, no existe ninguna expectativa de intimidad según preceptuado en la normativa federal. La única diferencia significativa que podemos apuntar es que en el caso de autos distinto a *Place v. United States, supra,* no hubo detención de equipaje porque los bultos sometidos al olfato del can estaban colocados contra la pared en el aeropuerto cuando el perro se acercó para oler los mismos.[13] Por lo tanto, es razonable colegir que el caso de autos es casi un *alter ego* de *Place v. United States*, *supra*. No vemos obstáculo fáctico que nos impida aplicar la normativa que emana de las decisiones emitidas por el Tribunal Supremo Federal y sus respectivas interpretaciones (tanto por los tribunales federales y estatales), a la controversia traída a nuestra consideración.

No obstante lo anterior, estamos consientes de la primacía que en nuestro ordenamiento jurídico tiene el derecho a la intimidad y su protección contra registros y allanamientos irrazonables. Por consiguiente, para resguardar tal derecho, entendemos que lo sostenido en *Place v. United States*, *supra*, debe ceñirse al contexto del equipaje o los bultos de una persona en un lugar donde los canes y los agentes del orden público tengan derecho a estar. Por tal

---

[13] Es importante distinguir cuando ocurre detención del equipaje y cuando no hay detención. La jurisprudencia federal ha señalado consistentemente que cuando se trata de la detención del equipaje para someterlo al olfato canino, es necesario tener sospecha razonable de que el equipaje contiene sustancias controladas. Precisamente en *Place v. United States, supra*, se acoge la norma federal reconocida en *Terry v. Ohio*, 392 U.S. 1 (1968) para aplicarla al equipaje. En *Terry v. Ohio* el máximo foro federal estableció que era válido someter a una persona a un registro si se sospechaba razonablemente que esa persona tenía armas, sin tener causa probable para arresto. *Íd.* 30. Véase, además, *U.S. v. Till-man*, 81 F.3d 773, 775 (8vo Cir.1996); *U.S. v. Polk*, 97 F3d 1096, 1099 (8vo Cir. 1996).

razón, deben concurrir las justificaciones expuestas por el Tribunal Supremo en dicho caso. Así, John Wesley Hall comenta holísticamente que, del razonamiento que hizo el Tribunal Supremo en el caso de *Place v. United States*, *supra*, se desprende que el olfato canino podría constituir un registro cuando es dirigido hacia una persona,[14] grupo de personas,[15] o cuando dicho examen pueda ser objeto de vergüenza o cause algún inconveniente en el contexto de una investigación particular. J.W. Hall, *op. cit.*, Vol. I, pág. 667. Nótese que las circunstancias recién aludidas, quedan fuera del *ratio decidendi* sobre el que se cimienta la decisión de *Place v. United States*, *supra*.

**B.**

Aunque, como ya apuntamos, no existen obstáculos fácticos para la incorporación en nuestra jurisdicción del precedente federal, no estamos ajenos al hecho de que se podrían esgrimir argumentos para rechazar jurídicamente el mismo. El más preeminente de todos, es a nuestro entender, el relacionado al ámbito mínimo federal y su corolario de "factura más ancha". Por eso, es necesario despejar el panorama para que la decisión que hoy tomamos no malogre la pretensión última y no caprichosa de este Tribunal, de hacer justicia.

---

[14] Véase a modo ilustrativo, *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1267 (9no Cir. 1999).

[15] Véase a modo ilustrativo, *Horton v. Goose Creek Independent School District*, 690 F.2d 470, (Tex. 1982).

Sabido es que la aplicabilidad de un derecho constitucional federal constituye sólo el ámbito mínimo de dicho derecho. Por eso, el Tribunal Supremo de un estado, incluyendo a Puerto Rico, puede interpretar su constitución para darle a un derecho un ámbito mayor, pudiendo redundar en una protección mayor al individuo que la que reconoce la Constitución Federal. *Pueblo v. Dolce*, *supra*. Como corolario de este principio, se ha reconocido que nuestra Carta de Derechos es de factura más ancha que la Constitución Federal. *López Vives v. Policía de Puerto Rico*, 118 D.P.R. 219 (1987). Es decir, que al igual que los estados de la Unión, en Puerto Rico podemos ser más amplios y abarcadores que el Tribunal Supremo de Estados Unidos al interpretar una cláusula homóloga de la Constitución Federal. *H.M.C.A. v. Contralor*, 133 D.P.R. 945, 974-975 (1993). De esta manera, hemos sostenido que nuestra Constitución es más abarcadora que la Constitución Federal en lo concerniente a la concesión de derechos, incluyendo el derecho a la intimidad. *H.M.C.A. v. Contralor*, *surpra*; *Pueblo v. Rivera Colón*, 128 D.P.R. 672, 680 (1991); *Pueblo v. Malavé González*, 120 D.P.R. 470, 475 (1988). De esta forma, la Cuarta Enmienda de la Constitución Federal, según interpretada por el Tribunal Supremo de los Estados Unidos de América, constituye la protección mínima que los estados están obligados a reconocer. *Rullán v. Fas Alzamora*, 166 D.P.R. 742, 771 (2006).

Al amparo de esa realidad, en el caso de autos, muy bien se podría obviar y rechazar por completo lo preceptuado por

la jurisprudencia federal en torno al examen de olfato canino para detectar narcóticos en el equipaje de una persona, descansando en el reiterado principio de factura más ancha. Sin embargo, hacer abstracción de la normativa federal, basándonos en la factura más ancha de nuestra Carta de Derechos, nos parece innecesario y poco persuasivo. *A contrario sensu*, entendemos que el precedente federal reseñado debe regir en nuestra jurisdicción porque brinda equilibrio entre el interés estatal de combatir el crimen y el derecho a la intimidad que alberga todo ciudadano sobre sus pertenencias.

No negamos que nuestra Carta de Derechos tenga un alcance mayor de protección que la Constitución Federal.[16] Después de todo, se trata de una Carta de Derechos aprobada más de un siglo después que el *Bill of Rights* de la Constitución de los Estados Unidos. Véase en general, E.L. Chiesa, *Los derechos de los acusados y la factura más ancha*, 65 Rev. Jur. U.P.R. 83, (1996). De esta forma, y por mencionar alguna, la excepción de registro sin orden por ser incidental al arresto, ha sido objeto de una interpretación de factura más ancha en Puerto Rico. Véase, *Íd.*, págs. 137-138.

Empero, también ha ocurrido lo contrario. Es decir, que este tribunal ha omitido hacer extensiva una interpretación

---

[16] A manera de ejemplo, surge del propio texto de la Constitución de Puerto Rico que en la Sección 8 de la Carta de Derechos, Art. II, sec. 8, Const. de Puerto Rico, L.P.R.A., Tomo 1, el derecho a la intimidad se reconoce de forma expresa distinto a como ocurre en la Constitución Federal.

de factura más ancha en cuanto a la protección contra registros y allanamientos irrazonables. De esta manera, en *Pueblo v. Dolce*, *supra*, este Foro adoptó los requisitos de registro a plena vista como excepción a un registro sin orden según se habían establecido en la jurisprudencia federal sin ampliar el alcance del derecho a la intimidad. Véase, E.L. Chiesa, *supra*, pág. 141. Asimismo, no puede hablarse de factura más ancha cuando se trata de evidencia abandonada, porque la garantía constitucional contra registros y allanamientos irrazonables no cubre estos objetos, por no existir expectativa razonable de intimidad. *Pueblo v. Ortiz Martínez*, *supra*, págs. 144-145; Véase, E.L. Chiesa, *supra*, pág. 140.[17] Tampoco hay factura más ancha cuando se trata de evidencia en campo abierto. Véase, E.L. Chiesa, *Derecho Procesal Penal: Etapa Investigativa*, (L. Abraham y P. Abraham), 1ra ed., E.U., Pub. JTS, 2006, págs. 206-212.

Es más, esta Corte, en el pasado y en relación a la protección contra registros y allanamientos irrazonables, ha adoptado la jurisprudencia federal por ser **persuasiva y aplicable** a nuestra Constitución, rechazando flagrantemente una interpretación de factura más ancha. *Pueblo v. Rivera Collazo*, 122 D.P.R. 408 (1988). En este último caso, se reconoció como excepción a un registro válido sin orden, el registro en casos de emergencia. Allí, este Tribunal expresó:

---

[17] Véase, *Pueblo v. Duarte Mendoza*, 109 D.P.R. 596, 599-600 (1980). Aquí, este Foro reconoció el derecho al aborto, limitándose a predicar ese derecho en la Constitución Federal y anunciando que en dicho tema "la extensión de las protecciones que brinda nuestra Constitución no es mayor a la que brinda la norteamericana".

"Aunque hemos resuelto reiteradamente que al interpretar el alcance de nuestras garantías contra registros e incautaciones podemos ir más allá de los límites de la Cuarta Enmienda,[…] que nuestra Constitución goza de una vitalidad independiente de la Constitución de Estados Unidos,[…] y que su interpretación no ha sido ni tiene necesariamente que ser históricamente paralela en todo sentido con la que se ha dado a la Cuarta Enmienda,[…] **nos parece que dicha interpretación es sumamente persuasiva y aplicable a nuestra Constitución.**" *Íd.*, pág. 419.

Como se desprende de lo anterior, no existe una clasificación omnímoda que delimite la aplicación de la factura más ancha en nuestro ordenamiento. Sin embargo, no debemos olvidar, ni ser indiferentes a la intención de los forjadores de nuestra Constitución, cuando determinaron en su juicio, considerando siempre el mejor bienestar del pueblo, que "las garantías personales frente al arresto, el registro, la incautación y el allanamiento tienen su límite en la conducta criminal". 4 Diario de Sesiones de la Convención Constituyente, págs. 2567-2568.

De hecho, y con toda razón, el Honorable ex Juez Asociado del Tribunal Supremo señor Negrón García, ideó una norma interpretativa de la frase factura más ancha que intenta evitar la invocación automática de tal principio. Al respecto, el Juez Asociado, señor Negrón García señaló que:

"la antedicha **'factura más ancha'** es descriptiva, no prescriptiva. No debe dar lugar, irreflexivamente, a un proceso mediante el cual la norma constitucional puertorriqueña se determina mecánicamente, tomando como base el grado de protección a la intimidad establecido por la jurisprudencia del Tribunal Supremo federal y luego ensanchándolo. Que nuestra jurisprudencia establezca un grado mayor de protección que la federal es quizás predecible, pero no es ni debe ser un pre-

requisito.

> Nuestra Constitución requiere, no que automáticamente establezcamos una protección mayor que la federal, sino una protección fundamentada en los principios que acoge nuestra propia Carta de Derechos. **Si el razonamiento esbozado en la jurisprudencia de otras jurisdicciones nos convence, es perfectamente apropiado acogerlo.**" *Pueblo v. Yip Berrios*, *supra*, nota al calce, pág. 429. (Opinión Disidente del Juez Asociado, señor Negrón García, 1997).

La doctrina en Puerto Rico parece estar de acuerdo con tal postura. Por ejemplo, la profesora Olga Elena Resumil ha manifestado: "[E]l Hon. Negrón García plantea una interesante norma interpretativa de la frase **factura más ancha** que merece alta consideración y, con la cual coincidimos…" O. E. Resumil, *Derecho Procesal Penal*, 67 Rev. Jur. U.P.R. 941 (1998); Véase, además, en general, E. L. Chiesa, *supra*.

Cabe señalar, que existen un sin número de jurisdicciones estatales que han acogido lo pautado por el Tribunal Supremo Federal en *Place v. United States*, *supra*, rechazando una interpretación de factura más ancha, por entender que la normativa federal es apropiada. Uno de esos casos es el de *State v. Sheetz*, *supra*, en el cual el estado de Montana, acogió la norma de *Place v. United States*, *supra,* al realizar un balance entre el interés estatal y el derecho a la intimidad. Su razonamiento fue que, al igual que una persona no tiene expectativa legítima de intimidad sobre el color o peso del equipaje que lleve a un aeropuerto (lugar público), tampoco lo tiene cuando es olfateado. La corte del estado de Montana entendió que el examen de olfato canino

sobre el equipaje no revelaba nada sobre los bienes de las personas a no ser que fuera contrabando por lo que el contenido del equipaje permanecerá privado. En fin, concluyó afirmando que la utilización de un can entrenado para detectar narcóticos sobre los equipajes de las personas no violaba el derecho a la intimidad ni tampoco constituía un registro conforme su Constitución. *Íd.*, págs. 727-728.[18]

De igual forma, en *Daniels v. Cochran*, 654 So.2d 609 (Fla. 4th DCA 1995) y posteriormente en *Lindo v. State*, 983 So.2d 672, (Fla. App. 4 Dist., 2008) el tribunal de Florida acogió y ratificó la normativa federal citando con aprobación el caso de *Place v. United States*, *supra.* En ambos casos se resolvió que cuando se utiliza el examen de olfato canino sobre el equipaje de una persona, dicha acción no constituye un registro al amparo de la Cuarta Enmienda. De hecho, en el caso de *Lindo v. State*, *supra*, el tribunal fue más lejos, al determinar que la detención temporera de dos paquetes en un correo no era una detención que requiriera sospecha individualizada razonable para tal actividad.[19]

---

[18] Cabe destacar que el estado de Montana al igual que Puerto Rico, reconoce el derecho a la intimidad de manera independiente en el Art. II, Sec. 10 de su Constitución y el derecho a protección contra registros y allanamientos irrazonables en su Art. II Sec. 11 de la misma. A pesar de que dicho estado no estaba obligado a acoger la normativa de *Place v. United States, supra*, por conducto del principio del ámbito mínimo federal y la factura más ancha, decidió seguir el precedente federal.

[19] Esto se distingue de lo resuelto en *Place v. United* States, *supra*, que extendió la norma de *stop and frisk* reconocida en *Terry v. Ohio*, *supra*, para hacerla efectiva en el contexto del equipaje de una persona. Dicha norma establece que el equipaje de una persona puede ser detenido cuando existe sospecha individualizada razonable de que contiene algún material delictivo siempre que sea por un espacio de tiempo razonable.

A similar conclusión llegó el Tribunal Supremo de Colorado en el caso de *People v. Wieser*, 796 P.2d 982 (1990), cuando tuvo que resolver si el examen de olfato canino llevado a cabo sobre el *storage locker* del acusado, que se encontraba en un lugar accesible para el público, era un registro bajo la Cuarta Enmienda de la Constitución Federal. Allí, el Tribunal Supremo de Colorado sostuvo, de forma indubitada, que bajo la Constitución Federal y bajo su Constitución Estatal, el examen de olfato canino en dicho contexto no es un registro.

En *State v. Harris*, 280 S.W.3d 832 (Tenn. Crim. App., 2008), el tribunal de Tennessee sostuvo que el examen de olfato canino alrededor de un vehículo que es detenido legalmente, tampoco es un registro en sentido constitucional que active la protección de la Cuarta Enmienda. Además, el tribunal, endosando lo resuelto por el caso de *Illinois v. Caballes*, *supra*, expresó que no hacía falta sospecha individualizada razonable para realizar el examen de olfato canino alrededor del vehículo detenido, toda vez que dicho vehículo fue detenido legalmente por violar una ley de tráfico. A la misma conclusión llegó el Tribunal de Apelaciones del estado de Arizona en el caso de *State v. Box*, 205 Ariz. 492 (2003), al concluir que el examen de olfato canino alrededor de un vehículo que es detenido válidamente no constituye un registro al amparo de la Cuarta Enmienda de la Constitución Federal.

De igual manera, en el caso de *Dowty v. State*, 363 Ark.
1 (2005), el Tribunal Supremo de Arkansas resolvió que
realizar un examen de olfato canino alrededor de un vehículo
que se encontraba estacionado en un lugar público no es un
registro conforme a la Cuarta Enmienda. En dicho caso los
acusados alegaron que el examen de olfato canino constituyó
un registro porque los agentes que condujeron el
procedimiento, no tenían sospecha individualizada razonable
de que en efecto, en el carro había narcóticos. El Tribunal
Supremo de Arkansas, citando con aprobación a lo resuelto en
*Place v. United States*, *supra*, y lo que habían resuelto
distintos estados ante la misma controversia,[20] concluyó que
como el examen de olfato canino no era un registro en sentido
constitucional, no era necesario tener sospecha
individualizada razonable para justificar el examen. Véase,
*Vega v. State*, 56 Ark App. 145, 148 (1997).

A tal grado se ha extendido el acogimiento de lo
preceptuado por el Foro Federal en *Place v. United States*,
*supra*, que en el caso de *People v. Jones*, 755 N.W.2d 224
(Mich. App., 2008), el estado de Michigan, resolvió que un
examen de olfato canino conducido frente a la puerta de la
residencia del acusado no constituyó un registro a la luz de
la Cuarta Enmienda. La corte estatal sostuvo que el can
estaba legalmente presente frente a la residencia cuando

---

[20] En *State v. McMillin*, 23 Kan. App. 2d 100, 927 P.2d 949 (1996), en el
estado de Kansas se sostuvo que el examen de olfato canino alrededor de
un carro estacionado en un lugar público no era un registro bajo la
Cuarta Enmienda. Lo mismo ocurrió en *State v. Garcia*, 195 Wis. 2d 68, 535
N.W.2d 124 (1995), donde el estado de Wisconsin llegó a la misma
conclusión.

detectó las sustancias controladas. Además señaló que no había expectativa de intimidad frente a la entrada de la residencia porque no tenía ninguna verja que impidiera llegar hasta la misma ni había ningún signo o letrero que le prohibiera a la gente entrar o acercarse a la propiedad.

En suma, la gran mayoría de los estados ha seguido el derrotero que fue pautado por la jurisprudencia federal del Tribunal Supremo de Estados Unidos, a los efectos de que el examen de olfato canino no constituye un registro al amparo de la Cuarta Enmienda de la Constitución Federal.[21]

Sostener que el examen de olfato canino sobre el equipaje de una persona es un registro, implicaría tener que obtener una orden judicial previa para registrar o como mínimo, exigirles a los agentes del orden público, sospecha previa de que el equipaje a registrarse contiene narcóticos. Tal contención tornaría el uso de los canes en uno casi fútil. Así por ejemplo, si los canes pudieran utilizarse únicamente para olfatear bultos cuando se tuviera la sospecha

---

[21] Véanse, *State v. Box*, 205 Ariz. 492, 496-497 (2003); *Dowty v. State*, 363 Ark 1 (2005); *People v. Ortega*, 34 P.3d 986, 991 (Colo., 2001); *Bain v. State*, 839 So.2d 739 (Fla. App., 2003); *Cole v. State*, 254 Ga. App. 424 (2002); *State v. Snitkin*, 67 Haw. 168 (1984); *State v. Parkinson*, 135 Idaho 357 (2000); *People v. Cox*, 318 Ill.App.3d 161 (2000); *Bradshaw v. State*, 759 N.E.2d 271 (Ind. App., 2001); *State v. Bergmann*, 633 N.W.2d 328 (Iowa, 2001); *State v. Barker*, 252 Kan. 949 (1993); *State v. Kalie*, 699 So.2d 879 (La., 1997); *State v. Washington*, 687 So.2d 575 (La. App., 1997); *Fitzgerald v. State*, 384 Md. 484 (2004); *Commonwealth v. Feyenord*, 62 Mass. App. 200 (2004); *Millsap v. State*, 767 So.2d 286 (Miss. App., 2000); *State v. LaFlamme*, 869 S.W.2d 183 (Mo. App., 1993); *Gama v. State*, 112 Nev. 833 (1996); *State v. Van Cleave*, 131 N.M. 82 (2001); *People v. Offen*, 78 N.Y.2d 1089 (1991); *State v. Fisher*, 141 N.C. App. 448 (2000); *State v. Kesler*, 396 N.W.2d 729 (N.D., 1986); *State v. Knight* (Ohio Com. Pl. 1997); *State v. Rusnak*, 120 Ohio App.3d 24 (1997); *Scott v. State*, 927 P.2d 1066 (Okla. Crim. App., 1996); *State v. Smith*, 327 Or. 366 (1998); *Commonwealth v. Johnston*, 515 Pa. 454 (1987); *State v. England*, 19 S.W.3d 762 (Tenn., 2000); *Rodriguez v. State*, 106 S.W.3d 224 (Tex. App., 2003); *State v. Miller*, 256 Wis.2d 80 (2002); *Morgan v. State*, 95 P.3d 802 (Wy., 2004).

previa de que tal equipaje contiene material delictivo, el can no haría falta ya que su provecho estriba precisamente en que pueden descubrir posible material delictivo sin las trabas de tener que conducir antes un registro o necesitar sospecha previa para intervenir con el equipaje.

Por todo lo expresado, entendemos que la jurisprudencia federal relacionada al caso de autos, es sumamente persuasiva y aplicable. No vemos razón meritoria para rechazar la utilización de los canes con el fin de olfatear equipaje o bultos de las personas sin que ello constituya un registro cuando se trata de supuestos donde los bultos ni siquiera son detenidos por los agentes del orden público y se encuentran en un lugar público donde los agentes y canes tienen derecho a estar. Rechazar lo resuelto por el Tribunal Supremo en *Place v. United States*, *supra*, y su posterior progenie jurisprudencial, implica ponerle trabas innecesaria al Estado en la cada vez más ardua lucha contra el crimen.

Es imperativo destacar nuevamente, que lo resuelto hoy en el caso de autos, debe limitarse al contexto fáctico que hemos analizado. Nuestra decisión no pretende darle un cheque en blanco a los agentes del estado para que por medio de la utilización de canes entrenados para detectar narcóticos, realicen ejercicios no enmarcados en lo aquí resuelto. Una vez más, como hemos discutido, sostenemos, que el examen de olfato canino que se realice sobre el equipaje de una persona que se encuentra en un lugar público donde los agentes del

estado y sus respectivos canes tienen derecho a estar, no es un registro en sentido constitucional.

## C.

Existe otro argumento que podría esbozarse como un conato para rechazar la adopción a nuestra jurisdicción del examen de olfato canino sobre el equipaje de una persona. Se trata del carácter tecnológico que caracteriza a un can entrenado para detectar narcóticos y que podría convertir a dicho perro en un instrumento demasiado intrusivo. Ciertamente, se ha reconocido que utilizar un can para propósitos investigativos está relacionado con la utilización de instrumentos tecnológicos que asisten los sentidos de un agente u oficial del orden público para detectar sustancias controladas. Véase, en general, W.R. LaFave, *Search and Seizure*, 4ta ed., St. Paul, West Publ. Co., Vol. I, secs. 2.2 (f), 2.2 (g). Véase, además, J.W. Hall, *supra*, secs. 9.9-9.22. Ahora bien, el hecho de que un can entrenado para detectar narcóticos tenga unas habilidades sensoriales más desarrolladas que las de un ser humano, no debe supeditar su utilización a detectar o investigar únicamente aquello que una persona podría detectar o investigar a través de sus sentidos. No debemos olvidar que aunque todo registro inherentemente incluye la utilización de los sentidos (tacto, gusto, olfato, etc.) no toda utilización de los sentidos constituye un registro. Véase, *United States v. Nicholson*, 144 F.3d 632, 636 (10mo Cir. 1998). Por lo tanto, limitar la utilización de un can a explorar aquello que el hombre

solamente podría descubrir con sus propios sentidos, connota en limitar de forma generalizada la ayuda que puedan dar al Estado estos instrumentos para combatir el crimen y por otro lado, desarticular la noción básica de que no toda utilización de los instrumentos tecnológicos constituye un registro en sentido constitucional.[22] Como bien ha señalado el Tribunal Supremo Federal: "la mera existencia de los avances tecnológicos no implica la protección de la Cuarta Enmienda, sino más bien la explotación de dicha tecnología". (Traducción nuestra). *United States v. Karo*, 468 U.S. 705, 712 (1984). Así, y en lo pertinente al caso de autos, se ha resuelto que no toda técnica de investigación que revele algo acerca del contenido del equipaje de una persona, constituye un registro. *Place v. United States, supra; United States v. Lovell, supra*. Además, en el caso del olfato canino, el hecho de que un perro como detector de olores sea más habilidoso que una persona, no transforma el olfato de dicho animal en uno ilegal, pues al igual que la evidencia a plena vista de un oficial puede ser registrada sin una orden judicial previa, evidencia a pleno olfato puede ser detectada sin una orden. *United States v. Roby*, 122 F.3d 1120, 1124-1125 (8vo Cir. 1997).

Por otro lado, nos parece necesario hacer unas distinciones importantes --relacionadas a los instrumentos

---

[22] Véase, *Pueblo v. Soto Soto, supra; Dow Chemical Co. v. United States*, 476 US 227 (1986); *United States v. Knotts*, 460 US 276 (1983); Véase, además, J.W. Hall, C. Underwood, *Search and Seizure*, 3ra ed., Newark, NJ & San Francico, CA, LexisNexis Publ. Co., Vol. I & II Supplement, pág. 152-160.

tecnológicos que se utilizan para investigar-- entre el caso de *Place v. United States*, *supra* y el de *Kyllo v. United States*, *supra*, ya que este último podría dar la falsa impresión de enervar lo resuelto en el primero. En el caso de *Kyllo v. United States*, *supra*, el Tribunal Supremo Federal resolvió que utilizar un *thermal imager* (artefacto que detecta el calor que emite una residencia lo que permite detectar el crecimiento de marihuana en la misma) constituye un registro a la luz de la Cuarta Enmienda. Para llegar a dicha conclusión la corte enfatizó el hecho de que el *thermal imager* no era fácilmente accesible y disponible al público en general y a que era capaz de detectar tanto actividad protegida como no protegida por la Constitución (la hora en que una persona toma un sauna o se baña). *Íd*. Ciertamente, al igual que un *thermal imager*, el olfato canino es un instrumento que permite a la policía obtener información concerniente a un área protegida que de otra forma no podría obtenerse sin intrusión física. Ahora bien, distinto a *Kyllo v. United States*, *supra*, los perros son accesibles para el público en general y el olfato canino solamente detecta la presencia o ausencia de narcóticos (sobre lo que no existe expectativa a la intimidad conforme *United States v. Jacobsen*, *supra*) por lo que la información obtenida es limitada y no se extiende a actividades protegidas como ocurre con el *thermal imager*.[23] Podemos colegir que *Kyllo v.*

---

[23] En *Illinois v.* Caballes, *supra*, págs. 409-410, el máximo Foro Federal sostuvo que no había ninguna inconsistencia entre lo resuelto en Kyllo v. United States, *supra* y la utilización del examen de olfato canino para

*United States*, *supra*, aplica únicamente a actividades o cosas sobre las que el individuo tiene una expectativa razonable de intimidad como lo es el hogar. Véase, Tracey Maclin, *Katz, Kyllo and Technology: Virtual Fourth Amendment Protection in the Twenty-First Century*, 72 Miss. L.J. 51, 104-105, 124; Véase, *United States v. Elkins*, 300 F.3d 638, 646 (6th Cir. 2002).[24] Por ende, el caso de autos es armonizable con *Kyllo v. United States*, *supra*, a través del crisol de *Place v. United States*, *supra*, que como ya vimos, es afín al caso de autos.

A su vez, nos parece que es importante distinguir lo predicado en *Pueblo v. Soto Soto*, *supra*, con el caso de *Place v. United States*, *supra* para demostrar que son armonizables. En el primero, este Tribunal resolvió que los binoculares (aunque se pueden usar para observar el campo abierto frente a una casa sin que constituya un registro) no se deben utilizar para observar lo que no se podría ver sin una intrusión inconstitucional a la intimidad. En el caso de autos, el olfato canino se utilizó en un lugar público, donde los agentes tenían derecho a estar y sobre el espacio de aire que rodeaba los bultos que fueron soltados en el suelo del

---

detectar narcóticos. Esto porque el olfato de un can se limita a detectar artículos sobre los cuales no se reconoce expectativa legítima de intimidad pero el *thermal imager* tenía la capacidad de detectar tanto actividades protegidas como no protegidas por la Cuarta Enmienda.

[24] Compárese a *United States v. Karo*, *supra,* con *United States v. Knotts*, *supra*. En el primero se resolvió que monitorear con un beeper electrónico el interior de una casa, constituye un registro. En el segundo se resolvió que dicho acto no es un registro si se realiza cuando se está viajando en público. Véase además, Michael Adler, *Cyberspace, General Searches, and Digital Contraband: The Fourth Amendment and the Net-Wíde Search*, 105 Yale L.J. 1093 (1996).

aeropuerto por los recurridos. Asimismo, el olfato canino fue dirigido únicamente a detectar sustancias controladas sobre las cuales no hay expectativa a la intimidad. Este mecanismo investigativo no expone artículos íntimos de las personas dentro de sus equipajes. Por eso, no hubo intrusión inconstitucional a la intimidad de los recurridos.[25] En fin, de lo anterior se desprende que hay armonía entre el caso de *Place v. United States*, *supra* y el de *Pueblo v. Soto Soto*, *supra*.

En conclusión, la utilización del olfato canino como instrumento tecnológico para ayudar al Estado en sus investigaciones, no debe limitarse, *a priori*, por el hecho de que permite obtener información que un ser humano no podría obtener por medio de sus sentidos. Es menester analizar los hechos concretos de cada caso y la manera en que se utiliza el instrumento para determinar si permite otros usos más abarcadores. No constituye ninguna explotación tecnológica el utilizar un can para un fin y contexto delimitados como lo es el olfatear bultos o equipajes en un lugar público. Sobre todo cuando la información divulgada por el perro es una sobre la cual no existe expectativa a la intimidad por recaer sobre alguna actividad ilegal como el contrabando.

**V.**

Una vez determinado que el examen de olfato canino sobre el equipaje de los recurridos no constituyó un registro, nos

---

[25] Véase, *United States v. Esquilin*, *supra*, pág. 318 (2000); *United States v. Reed*, *supra*, pág. 649 (6to Cir. 1998); *United States. v. Garcia*, *supra*; *United States v. Goldstein*, *supra*.

resta determinar si la intervención ulterior a la marca positiva del can, es un registro al amparo de la Constitución de Puerto Rico, y de ser un registro, si fue razonable. Resolvemos en la afirmativa ambas interrogantes.

El examen de olfato canino, *per se*, no justifica el registro final sin obtenerse una orden judicial o sin que concurra alguna de las excepciones al registro sin orden. Véanse, *United States v. Sokolow*, 490 U.S. 1, 9 (1989); *Place v. United States, supra; U.S. v. Williams*, 365 F.3d 399, 405-406 (5th Cir. 2004); *U.S. v. Carter*, 139 F.3d 424 (4to Cir. 1998); *U.S. v. Lambert*, 46 F.3d 1064 (10mo Cir. 1995); *U.S. v. Harvey*, 961 F.2d 1361 (8th Cir. 1992).[26] Es decir, la realización del examen de olfato canino sobre el equipaje, al no ser un registro, cuando produce una marca positiva, tiene el efecto de **originar** los motivos fundados o de **corroborar** la sospecha previa que se tenía para motivar el ulterior registro.

A la luz de esa realidad, el Procurador General sostiene que el registro ulterior a la marca positiva del can fue razonable porque el olfato del can es análogo al pleno olfato de un agente como excepción para incautar evidencia sin previa orden judicial. El Procurador General se apoya en los

---

[26] Sin embargo, nótese que cuando el examen de olfato canino se realiza sobre el exterior de un automóvil, no hace falta obtener una orden judicial previa o cumplir con alguna de las excepciones al registro sin orden, para proceder a registrar el vehículo. *Illinois v. Caballes*, *supra*, pág. 406. Tampoco hace falta una orden cuando se trata de registros rutinarios de bultos o equipajes en un aeropuerto por razones de seguridad pública. Véase, *Chandler v. Miller*, 520 U.S. 305, 323 (1997).

casos de *Pueblo v. Dolce*, *supra* y *Pueblo v. Acevedo Escobar*, *supra*.

En *Pueblo v. Dolce, supra,* se establecieron los criterios que se deben analizar para determinar si un objeto se encuentra a plena vista y puede ser incautado sin previa orden judicial, a saber: 1) el artículo debe descubrirse por estar a plena vista y no en el curso o por razón de un registro; 2) el agente que divise la evidencia, debe tener derecho a estar en el lugar desde donde alcanzó a verla; 3) debe descubrirse por inadvertencia; 4) la naturaleza ilícita del objeto debe ser ostensible. *Íd, 436.* En *Pueblo v. Acevedo Escobar*, *supra*, este Foro afirmó que la percepción de pleno olfato es análoga con la percepción a plena vista reconocida en *Pueblo v. Dolce*, *supra*, variando solamente el sentido a través del cual se detecta la evidencia. *Pueblo v. Acevedo Escobar, supra*, pág. *779.* Por esa analogía, los criterios adoptados en *Pueblo v. Dolce*, *supra,* tienen que confluir en *Pueblo v. Acevedo Escobar*, *supra*.

La excepción invocada por el Procurador General  no es de aplicación al caso de autos. La razón es que de un análisis de los requisitos esbozados en el caso de *Pueblo v. Dolce*, *supra*, no se puede concluir que se satisfagan cabalmente en el presente caso. Así por ejemplo, en este caso la evidencia no se descubre por inadvertencia ya que el agente Rosado Cintrón sospechaba que los bultos de los recurridos contenían narcóticos. Tampoco la naturaleza ilícita del objeto era apreciable por el agente puesto que la

cocaína hallada se encontraba oculta dentro de los bultos de los recurridos.

Por otro lado, se ha reconocido que en circunstancias particulares de necesidad especial del Estado un registro sin previa orden judicial es válido, si existe causa probable por sospecha individualizada.[27] Esta determinación se debe hacer a la luz de un balance de intereses entre los derechos del individuo y los intereses estatales. Véanse, *Pacheco Pietri v. E.L.A.*, 133 D.P.R. 907 (1993); *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602 (1989); *National Treasury Employees Union v. Von Raab*, 489 U.S. 656 (1989). Ya hemos exteriorizado, que al decidir si procede eximir al Estado de la necesidad de obtener una orden judicial previa para realizar un registro, lo determinante es que el interés público lo justifique y el peso de obtener la orden bajo las circunstancias particulares del caso, probablemente frustren el propósito legítimo que persigue el gobierno. *Pueblo v. Bonilla*, *supra*, pág. 334. En otras palabras, para determinar si posterior a un examen de olfato canino positivo se puede realizar el registro de los bultos, hay que atender la totalidad de las circunstancias haciendo un balance de intereses. De ahí, que las excepciones para llevar a cabo un registro sin orden no son *numerus clausus*, sino que se podrán

---

[27] El principio de sospecha individualizada ha sido reconocido por nuestro Ordenamiento en distintos casos. Véanse, *Pueblo v. Yip Berrios*, *supra*; *Pueblo v. Bonilla Bonilla*, 149 D.P.R. 318 (1999).

reconocer según las circunstancias particulares de cada caso.[28]

Con relación a la sospecha individualizada razonable que surge luego de realizar una investigación criminal, la misma se debe equiparar a los motivos fundados[29] para un arresto conforme lo estatuye la Regla 11 de Procedimiento Criminal, *supra*.[30] Esto debe ser así, ya que consideramos que si se trata de una norma válida para el arresto, debía serlo también para el registro o allanamiento en vista de que no hay mayor intrusión con la intimidad de la persona que el arresto. Véase, *Pueblo v. Muñoz Santiago*, 131 D.P.R. 965, 981-982 (1992). La incautación de la persona misma constituye una intervención gubernamental con la intimidad del ser humano mas grave que el registro o allanamiento de una pertenencia suya, y la norma que rige lo **mayor** debe ser buena también para una intervención **menor**. Véase, *Íd*. Véase, además, E.L. Chiesa, *op cit*., Vol. I, sec.6.10, pág. 361.

---

[28] Por eso, la incorporación a nuestro Ordenamiento Jurídico de las excepciones para legitimar un registro sin orden, tienen origen jurisprudencial. Véase, *Pueblo v. Riscard*, 95 D.P.R. 405 (1967); *E.L.A. v. Coca-Cola*, 115 D.P.R. 197 (1984); *Pueblo v. Narváez Cruz*, 121 D.P.R. 429 (1988); *Pueblo v. Sosa Díaz*, 90 D.P.R. 622 (1964).

[29] Entiéndase como motivos fundados "[a]quella información o conocimiento que lleva a una persona ordinaria y prudente a creer que la persona intervenida ha cometido un delito, independientemente de que luego se establezca o no la comisión del delito". *Pueblo v. Martínez Torres*, 120 D.P.R. 496 (1988).

[30] Dicho precepto estatuye que "[u]n funcionario del orden público podrá hacer un arresto sin la orden correspondiente: a) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. En este caso deberá hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario el funcionario deberá solicitar que se expida una orden de arresto; b) Cuando la persona arrestada hubiese cometido un delito grave (*felony*), aunque no en su presencia; c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (*felony*), independientemente de que dicho delito se hubiere cometido o no en realidad".

En este caso, las circunstancias particulares de necesidad especial fueron ejemplificadas en la sospecha individualizada razonable que anterior al examen del olfato canino poseían los agentes del orden público y que una vez se culminó el examen quedó corroborada. La sospecha individualizada razonable quedó probada al analizar los hechos del caso. Según se desprende de los autos, el Agente Rosado Cintrón recibió varias confidencias que personalmente corroboró, las cuales indicaban que los recurridos Díaz Medina y Bonano Pérez estaban envueltos en actividades ilícitas de contrabando. La última confidencia recibida por el agente Rosado Cintrón, puso de manifiesto que los recurridos estaban cometiendo un delito, al notificársele que llegarían en un vuelo proveniente de Culebra hacia Fajardo con sustancias controladas. Finalmente, cuando Rosado Cintrón llegó al aeropuerto, se encontró de frente a los recurridos, a cuyos bultos se les realizó un examen de olfato canino que arrojó positivo, corroborando una vez más la confidencia informada.[31] En fin, la cadena de confidencias corroboradas

---

[31] Nótese, que en este caso están presentes las circunstancias necesarias para que una confidencia sea suficiente y constituya los motivos fundados de la Regla 11 de Procedimiento Criminal, *supra*, para realizar un arresto sin orden. Véanse, *Pueblo v. Ortiz*, 135 D.P.R. 41 (1994); Pueblo *v. Díaz*, 106 D.P.R. 348 (1977). En estos casos este Tribunal resolvió que una confidencia constituye los motivos fundados para realizar un arresto sin orden bajo la Regla 11 de Procedimiento Criminal, *supra*, si se cumple con alguno de los siguientes requisitos: 1) que el confidente previamente ha suministrado información correcta; 2) que la confidencia conduce hacia el criminal en términos de lugar y tiempo; 3) que la misma ha sido corroborada por observación del agente o por información de otras fuentes; 4) que la corroboración se relaciona con actos delictivos cometidos o en proceso de cometerse. Además, también se satisface el requisito expresamente establecido en *Pueblo v. Serrano Cancel*, 148 D.P.R. 173 (1999), a los efectos de que para que la confidencia constituya los motivos fundados, tiene que haber una corroboración de las actividades sospechosas que se informan en la confidencia.

que culminaron con la marca positiva del can sobre el equipaje de los recurridos, son circunstancias excepcionales que tuvieron el efecto de configurar los motivos fundados para llevar a cabo el registro ulterior a la marca positiva del can, sin necesidad de una orden judicial previa.

Al realizar el balance de intereses entre el derecho a la intimidad de los recurridos y el interés del Estado en hacerle frente al trasiego de drogas y combatir la criminalidad, concluimos que la intervención del equipaje fue razonable al estar directamente relacionada a la previa sospecha individualizada del agente Rosado Cintrón de que el contenido del mismo tenía narcóticos. No olvidemos que además de la corroboración personal que hizo dicho agente, el recurrido Díaz Medina había sido arrestado anteriormente por estar involucrado con sustancias controladas. Este hecho le constaba al agente Rosado Cintrón al ser éste quien lo arrestó. Al sumar estos factores, no albergamos duda de que el interés del Estado en el registro sin orden sobrepasaba el derecho a la intimidad que albergaban los recurridos sobre sus bultos. Hay que añadir que exigirle a los agentes obtener

---

Si las confidencias corroboradas pueden crear los motivos fundados de la Regla 11 de Procedimiento Criminal, *supra*, también podrían crear la sospecha individualizada razonable --equivalente a los motivos fundados de la Regla 11 de Procedimiento Criminal, *supra*-- para llevar a cabo un registro sin orden. Esto parte del mismo principio reconocido en el caso de *Pueblo v. Muñoz Santiago*, *supra*, haciendo referencia al caso de *Pueblo v. Pagán Santiago*, 130 D.P.R. 470 (1992), de que una norma que es válida para el arresto, debía serlo también para el registro o allanamiento en vista de que no hay mayor intrusión con la intimidad de la persona que el arresto. Por lo tanto, si se permite arrestar a una persona cuando las confidencias corroboradas crean los motivos fundados, con mayor razón, se puede llevar a cabo un registro sin orden judicial cuando hay sospecha individualizada razonable surgida por unas confidencias corroboradas a través de la marca positiva de un can entrenado para detectar el artículo delictivo relacionado a la confidencia.

una orden, hubiese impedido el arresto de los recurridos hasta su obtención y el posterior hallazgo de la evidencia incriminatoria. De esta forma, la probabilidad de que se hubiese frustrado el interés del Estado en combatir la criminalidad aumentaba, toda vez que, *ab interim*, los recurridos estaban en libertad de abandonar el aeropuerto de Fajardo. Esto implicaba un potencial escape del eventual arresto. Más aún, en el caso de Díaz Medina significaba la posible recurrencia de las acciones delictivas que su historial reflejaba.

En síntesis, en el caso de autos la marca positiva del can corroboró las sospechas previas individualizadas que tenían los agentes del orden público. Esa corroboración fue suficiente para configurar los motivos fundados que les permitió abrir los bultos de los acusados y registrarlos. Es decir, en el caso de autos, la marca positiva del can les dio a los agentes los motivos fundados para llevar a cabo el registro del equipaje.

En fin, la marca positiva de un can entrenado para detectar sustancias controladas, puede producir sospecha individualizada razonable (si no se tenía) o corroborar la misma, según ocurrió en el caso de autos. En ambos supuestos, habrá que atender la totalidad de las circunstancias, haciendo un balance de intereses, para determinar si dicha marca fue o no suficiente para abrir y registrar el equipaje. Dicho análisis incluye evaluar la confiabilidad del can para detectar sustancias controladas, cuando la parte cuya

pertenencia haya sido olfateada y registrada, impugne el registro, a base de la confiabilidad y nivel de certeza del can para detectar narcóticos.

## VI.

Por las razones expuestas anteriormente, resolvemos que el examen de olfato canino sobre el equipaje no es un registro al amparo de la Constitución de Puerto Rico y que el registro realizado sin orden judicial ante la marca positiva del can fue razonable. En vista de ello, concluimos que los foros *a quo* erraron al ordenar la supresión de evidencia. Por lo tanto, se revoca el dictamen recurrido y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos, conforme con lo aquí resuelto.

Se dictará Sentencia de conformidad.


Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        v.

Amaury Díaz Medina,
Gerardo Bonano Pérez

    Recurridos

Certiorari

CC-2005-632

SENTENCIA

San Juan, Puerto Rico, a 27 de agosto de 2009.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca el dictamen emitido por el Tribunal de Apelaciones y se devuelve el presente caso al Tribunal de Primera Instancia para que continúen los procedimientos conforme con lo aquí resuelto.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton emite Opinión Disidente. La Jueza Asociada señora Fiol Matta disiente con la siguiente expresión:

"La Jueza Asociada Fiol Matta está de acuerdo con la parte de la Opinión Disidente del Juez Presidente Hernández Denton que resolvería que el examen de olfato canino constituye un registro per se en sentido constitucional. También, coincide con la Opinión Disidente en cuanto sostiene que no era necesario que los agentes obtuvieran una orden judicial previa para realizar un examen de olfato canino, al existir una sospecha individualizada razonable de

que los acusados Amaury Díaz Medina y Gerardo Bonano Pérez escondían contrabando en su equipaje. No obstante, no puede avalar el registro del bulto que hizo el agente Nelson Rosado Cintrón, una vez la sospecha individualizada razonable fue corroborada por el examen de olfato canino. Entiende que al corroborarse las confidencias de que los acusados Amaury Díaz Medina y Gerardo Pérez transportaban sustancias controladas, procedía arrestarlos y solicitar una orden judicial de registro para examinar los bultos. No existía una emergencia imperiosa, como lo sería la amenaza de una bomba, ni los agentes del orden público se encontraban en una situación donde su seguridad se encontrara en peligro, ni existía la posibilidad de que la evidencia se extraviara, ni ninguna otra excepción al registro sin orden previa que justificara la intromisión gubernamental con el bulto de los acusados. Al no procederse de esta manera, considero que no erraron los foros inferiores al declarar con lugar la Moción de Supresión de Evidencia."

La Juez Asociada señora Rodríguez Rodríguez, emite un voto disidente, uniéndose a las expresiones de la Jueza Asociada señora Fiol Matta.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        v.                      CC-2005-632  Certiorari

Amaury Díaz Medina,
Gerardo Bonano Pérez

    Recurridos

Opinión Disidente emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 27 de agosto de 2009.

*If the issue is framed in terms of whether a totally unrestrained use of such dogs in a dragnet fashion would be tolerable in a free society, one's answer might likely be no.* W.R. LaFave, Search and Seizure (2da Ed.) § 2.1(e), pág. 315.

Coincidimos con la Parte V de la Opinión del Tribunal en tanto revoca el dictamen recurrido que confirmó la supresión de la evidencia incautada. Al igual que la mayoría, en esta etapa entendemos que la intervención con el equipaje de los acusados fue razonable. Las circunstancias particulares de necesidad especial para prescindir de una orden judicial en este caso "fueron ejemplificadas **en la sospecha individualizada razonable que *anterior* al**

**examen del olfato canino** poseían los agentes del orden público [a la luz de una extensa investigación criminal] y que una vez se culminó el examen quedó corroborada". Op. del Tribunal, pág. 40. (Énfasis nuestro). A pesar de ello, nos vemos obligados a disentir en este caso por dos razones de trascendencia constitucional.

En primer lugar, la mayoría aprovecha la oportunidad para sugerir, de manera innecesaria y contradictoria, que la utilización de un examen de olfato canino con el propósito de detectar sustancias controladas en los efectos personales de una persona **bajo ninguna circunstancia constituye un registro *per se* en el sentido constitucional**. Discrepamos de tal razonamiento, pues se podría prestar para justificar el uso al azar y arbitrario de esta intromisión gubernamental hasta en la playa y en las plazas públicas del país, a pesar de que toda la evidencia empírica disponible apunta a que el margen de error del olfato de los perros acarrea un riesgo potencial de infringir el derecho de intimidad de los individuos. En contraste, nos hubiésemos ceñido a los hechos de este caso para resolver, al amparo de nuestra Carta de Derechos, que el examen de olfato canino en controversia fue un registro razonable **dado que medió una sospecha individualizada** de que los acusados participaban en un esquema de contrabando de sustancias controladas.

Por otro lado, disentimos de la Opinión del Tribunal **en cuanto al remedio final concedido**. Al disponer del caso, la mayoría parte de la premisa inarticulada de que el olfato de una unidad canina es una herramienta tecnológica precisa e

infalible. A su vez, el Tribunal no toma en consideración que **ni el manejador del can ni el analista forense que preparó el informe de las sustancias incautadas** estuvieron presentes en la vista de supresión de evidencia que revisamos en el recurso de epígrafe.

En atención a esa realidad procesal, y contrario a la Opinión del Tribunal, devolveríamos el caso al foro de instancia con la instrucción particular de que la admisibilidad final de la evidencia allanada esté sujeta a que el Ministerio Público presente el testimonio de ambos funcionarios en el juicio y que éstos estén disponibles para ser contrainterrogados por la defensa sobre la confiabilidad de las referidas herramientas investigativas. De esa forma, se salvaguarda el derecho de confrontación de los acusados bajo la Sexta Enmienda de la Constitución Federal, de conformidad con lo resuelto recientemente por el Tribunal Supremo de Estados Unidos en Meléndez-Díaz v. Massachusetts, 129 S.Ct. 2527 (2009).

## I.

El Ministerio Público presentó sendas acusaciones en contra de Amaury Díaz Medina y Gerardo Bonano Pérez por violación al Art. 401 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2401. En esencia, se les acusó de poseer catorce kilos de cocaína con la intención de distribuirla.

Posteriormente, y antes de la celebración del juicio, Díaz Medina presentó una "Moción de Supresión de Evidencia" en la cual alegó que las sustancias controladas que dieron lugar a la acusación fueron incautadas mediante un registro

realizado en el equipaje de los acusados sin orden judicial previa. En vista de ello, adujo que dicha intervención gubernamental fue irrazonable bajo la Constitución del Estado Libre Asociado de Puerto Rico.

En la vista de supresión de evidencia declaró como único testigo el Agte. Nelson Rosado Cintrón, adscrito a la División de Drogas y Narcóticos de Fajardo. Sin embargo, **no testificó el Agte. Daniel Marín, quien fue el manejador del can llamado Pirata que realizó el examen de olfato en controversia. Además, se presentaron dos Certificados de Análisis Químico Forense, mas no testificó el perito que los preparó.**

Según se desprende del testimonio del agente Rosado Cintrón, el registro sin orden judicial del equipaje de Díaz Medina y Bonano Pérez **no fue producto de una inspección rutinaria.** Los agentes se presentaron al aeropuerto con la unidad canina precisamente para culminar una investigación criminal de varios días y corroborar ciertas confidencias que habían recibido, la cuales apuntaban a la supuesta participación de los acusados en un esquema de contrabando de drogas. Es decir, cuando los agentes llevaron al can Pirata para olfatear el equipaje de los acusados ya existía **una sospecha individualizada y razonable** de que Bonano Pérez y Díaz Medina se encontraban trasladando sustancias controladas desde Culebra hasta Fajardo. Luego de que –según le indicó el agente Marín al agente Rosado Cintrón–[32] el can

---

[32] Surge del expediente que el foro de instancia, de conformidad con la Regla 9(A) de Evidencia, 32 L.P.R.A. Ap. IV, R. 9(A), sólo admitió la prueba de referencia con

marcara positivo sobre los bultos de los acusados, se procedió a abrir el referido equipaje para confirmar la presencia de drogas. Tras efectuar el registro, los agentes encontraron siete kilos de cocaína en cada uno de los dos bultos incautados, para un total de catorce kilos.

Trabada la controversia, el Tribunal de Primera Instancia declaró con lugar la moción de supresión de evidencia. En síntesis, fundamentó su determinación en que el Ministerio Público no presentó prueba admisible de la razonabilidad del registro en la medida en que no produjo el testimonio del agente Marín, quien era el manejador del can. Además, concluyó que no existían los motivos fundados para realizar un registro sin orden judicial previa del equipaje en su fondo. Bajo fundamentos similares, el foro apelativo denegó el auto de *certiorari*.

Aún insatisfecho, el Procurador General acude ante nos. En esencia, aduce que el foro apelativo incidió al adjudicar el caso a base de la figura del registro incidental a un arresto, cuando procedía resolver que someter los bultos al olfato canino no constituyó un registro *per se*. Ello, pues sostiene que es aplicable la norma de evidencia a plena vista u olfato como excepción a la invalidez de los registros sin orden judicial.

Así las cosas, mediante la Opinión emitida en el día de hoy el Tribunal revoca el dictamen recurrido bajo la premisa

---

relación al manejo del can para los propósitos de determinar los hechos que motivaron al agente Rosado Cintrón a realizar el registro, mas no así como prueba sustantiva para el juicio en su fondo.

fundamental de que "la intervención del equipaje fue razonable **al estar directamente relacionada a la previa sospecha individualizada** del agente Rosado Cintrón de que el contenido del mismo tenía narcóticos". Op. del Tribunal, págs. 41-42. (Énfasis nuestro). En ese sentido, rechaza la teoría esbozada por el Procurador General que aduce que el examen de olfato canino no fue un registro porque el material delictivo que supuestamente contenía el equipaje se encontraba a plena percepción. Hasta ahí estamos de acuerdo.

Sin embargo, no logramos entender la necesidad de hacer unos pronunciamientos adicionales sobre la naturaleza del examen de olfato canino bajo el Artículo II, Sección 10 de nuestra Constitución. De conformidad con el precepto de autolimitación judicial, tales expresiones son totalmente fútiles e innecesarias bajo el contexto fáctico de este caso, por lo que constituyen meramente *dicta*. Ello, dado que la misma Opinión y el razonamiento esbozado en su Parte V reconoce que tanto la intervención con el perro como el registro en su fondo de los bultos se justificaron al demostrarse **una sospecha individualizada previa** de que los acusados estaban involucrados en el trasiego de sustancias controladas. Ese es precisamente el criterio que nos limitaríamos a adoptar para llegar al mismo resultado que la mayoría.

**Por tanto, no podemos suscribir la Opinión del Tribunal en su afán de abrir las puertas a una normativa impracticable que, al expresar tajantemente que el examen de olfato canino sobre los efectos personales no constituye un**

**registro, soslaya nuestra Carta de Derechos y su reconocimiento expreso del derecho de intimidad. Al proceder de esta manera, la mayoría esgrime una visión constitucional sumamente restrictiva que se abstrae de los hechos de este caso y que podría tener unas repercusiones nocivas para las libertades civiles en el país.**

A continuación, examinamos con detenimiento la disyuntiva analítica que se desprende de la Opinión del Tribunal. Enfatizamos nuestros puntos de coincidencia, así como nuestras serias discrepancias con la supuesta adopción de la factura mínima en este caso a pesar de que la normativa expuesta en la mencionada jurisprudencia federal al amparo de la Cuarta Enmienda es de un alcance incongruente con el desarrollo del derecho de intimidad en nuestro ordenamiento constitucional.

## II.

En primer lugar, es menester recordar que la Constitución del Estado Libre Asociado de Puerto Rico consagra el derecho de la ciudadanía a la protección de su intimidad personal, así como de sus casas, papeles **y efectos personales** contra registros, incautaciones y allanamientos irrazonables. Art. II, Sec. 10, Const. E.L.A. P.R., L.P.R.A. Tomo 1. Así pues, hemos expresado que el objetivo de esta protección constitucional es impedir que el Estado interfiera con la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias, e interponer la figura imparcial del juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a

la intrusión. Pueblo v. Yip Berríos, 142 D.P.R. 386 (1997); Pueblo v. Martínez Torres, 120 D.P.R. 496, 500 (1988).

En ocasiones anteriores hemos afirmado que "ante toda controversia relacionada con esta protección constitucional, lo primero es determinar la existencia o no de un registro". Pueblo v. Bonilla, 149 D.P.R. 318, 329 (1999); Pueblo en Interés del Menor N.O.R., 136 D.P.R. 949, 961 (1994). En algunas situaciones resulta complejo hacer tal determinación, pues la garantía constitucional protege a la persona como tal y no a lugares o cosas específicas. No obstante, la protección constitucional se puede extender a estos lugares y objetos en determinadas circunstancias por razón de la expectativa razonable de intimidad que alberga cada individuo sobre ellos. Pueblo v. Soto Soto, 168 D.P.R. 46, 54-55 (2006); Pueblo v. Ortiz Rodríguez, 147 D.P.R. 433, 440 (1999).

Por otra parte, para que ocurra un registro en el sentido constitucional no tiene que haber una intervención física en un lugar u objeto particular. Al dilucidar si ha ocurrido un registro, lo importante es determinar si se ha infringido una expectativa de intimidad que la persona alberga subjetivamente y que la sociedad está preparada para reconocer como razonable. Pueblo v. Soto Soto, supra, pág. 55; Pueblo v. Bonilla, supra, pág. 330; Pueblo v. Rivera Colón, 128 D.P.R. 672 (1991). Bajo esa misma óptica, se ha resuelto en reiteradas ocasiones que todo ciudadano guarda una expectativa razonable de intimidad sobre su equipaje y efectos personales, por lo que el examen de éstos constituye

un registro en el sentido constitucional, aun bajo el crisol de la factura mínima federal. Arkansas v. Sanders, 442 U.S. 753 (1979); United States v. Chadwick, 433 U.S. 1 (1977); Pueblo v. Bonilla, *supra*, pág. 329.[33]

En ese contexto, coincidimos con la mayoría al resolver que el allanamiento de la evidencia suprimida en el presente caso no cumplió con la excepción de un hallazgo a plena percepción invocada por el Procurador General para que validáramos el registro en controversia. La normativa constitucional puertorriqueña que reconoció esta excepción al requisito de orden judicial previa fue enunciada por primera vez en Pueblo v. Dolce, 105 D.P.R. 422 (1976).

En esa ocasión, este Foro estableció cuatro criterios que deben considerarse para determinar si el objeto incautado sin orden judicial se hallaba a plena vista previo al registro, a saber: (1) el artículo debe haberse descubierto por estar a plena vista y no en el curso o por razón de un registro; (2) el agente que observe la prueba debe haber tenido derecho previo a estar en la posición desde la cual podía verla; (3) debe descubrirse el objeto inadvertidamente; y (4) la naturaleza delictiva del objeto debe surgir de la simple observación. Cuando median estas circunstancias, no procede la protección constitucional contra registros irrazonables, pues el interés investigativo prevalece sobre la expectativa de intimidad mínima que

---

[33] Véanse, a modo ilustrativo, C.H. Whitebread & C. Slobogin, Criminal Procedure: An Analysis of Cases and Concepts, 4ta ed., 2004, págs. 118-121; E. Chiesa, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Forum, 1995, T. I, Vol. I, págs. 282-85.

abriga un individuo con relación a un objeto a plena vista. *Íd.*

Posteriormente en Pueblo v. Acevedo Escobar, 112 D.P.R. 770, 779 (1982), afirmamos que la percepción del olfato guarda analogía y equivalencia funcional con las situaciones en las que se aplica la doctrina sobre prueba a plena vista, pues la única diferencia es el modo en que el objeto es detectado. En ese caso, se resolvió que aun si el consentimiento al registro del baúl prestado por el acusado no se hubiera extendido al equipaje, hubiese subsistido la admisibilidad de la evidencia ocupada porque la sustancia controlada fue percibida por el simple olfato del agente, lo que equivale a la percepción sensorial de la vista. *Íd.* Véase, además, O. Resumil, Práctica Jurídica de Puerto Rico: Derecho Procesal Penal, Tomo 1, Equity, 1994, pág. 271.

En el presente caso, los agentes del orden público no descubrieron la prueba inadvertidamente. Además, la naturaleza delictiva de la evidencia incautada no era aparente de su faz, pues su existencia tampoco surgía de la simple percepción del olfato de los agentes. Más bien, éstos tuvieron que valerse del manejo de un can para hallar la cocaína supuestamente escondida en el equipaje de los acusados. Por ende, entendemos —al igual que la mayoría— que la excepción invocada por el Procurador General no es de aplicación al caso de autos.[34]

---

[34] Bajo esta misma premisa, el profesor Wayne R. LaFave ha expresado que "[the] application of a 'plain smell' doctrine to dog searches stretches the imagination". Véase W.R. LaFave, Search and Seizure, West, 4ta Ed., Sec. 2.2(g), pág. 528.

En efecto, la utilización de un can para los propósitos investigativos de este caso constituyó una herramienta efectiva para detectar sustancias controladas. Ello es similar a la utilización de instrumentos tecnológicos para complementar los sentidos perceptivos de un agente del orden público. Por lo general, el uso sin orden judicial previa de cualquier instrumento tecnológico en el contexto de una investigación es válido y no viola la prohibición de registros irrazonables, siempre y cuando se limite a acelerar el descubrimiento de evidencia que hubiese sido percibida eventual e inevitablemente por la plena percepción del ser humano. Véase, en general, W.R. LaFave, *supra*, Secs. 2.2(f), 2.2(g).

Cónsono con lo anterior, en Kyllo v. United States, 533 U.S. 27 (2001), el Tribunal Supremo Federal resolvió que el uso de un instrumento que detectaba el calor emitido por una residencia constituía un registro que requiere que se cumpla con todo el rigor de la Cuarta Enmienda. De otra parte, recientemente en Pueblo v. Soto Soto, *supra*, resolvimos que el uso de binoculares para observar el campo abierto frente a una residencia no constituía un registro irrazonable *per se*, pero aclaramos que "**[d]istinto sería el caso si el propósito de utilizar el artefacto tecnológico fuera para observar aquello que no se podría ver sin una intrusión inconstitucional en la intimidad de la persona**". Pueblo v. Soto Soto, *supra*, pág. 65, n.11. (Énfasis nuestro).

En atención a ello, somos del criterio que la utilización del examen de olfato de la unidad canina tampoco se puede amparar bajo la excepción que elaboramos recientemente en Pueblo v. Soto Soto, *supra,* en cuanto a los hallazgos a plena percepción mediante el uso de instrumentos tecnológicos en un campo abierto. La evidencia obtenida a raíz de la utilización del perro no hubiese sido percibida por el propio sentido del olfato ni de vista del agente Rosado Cintrón. Es decir, no se trató de la utilización de un instrumento cuyo uso se limitaba a acelerar el descubrimiento de evidencia que hubiese sido percibida eventual e inevitablemente por la plena percepción del ser humano, **sino para detectar aquello que no se podría percibir sin una intrusión física con la intimidad de la persona.**

En otras palabras, y contrario a lo sugerido por la Opinión del Tribunal, entendemos que el uso arbitrario de esta táctica investigativa se encuentra reñido con lo resuelto en Pueblo v. Soto Soto, *supra.* Dicho caso realmente se refiere al uso de instrumentos tecnológicos **bajo la excepción de hallazgo a plena percepción que la misma Opinión del Tribunal reconoce que no es aplicable a este caso.** Además, y como explicaremos más adelante, la utilización del examen de olfato canino sin control constitucional alguno tiene el potencial de proveer positivos falsos, por lo que su uso en esas circunstancias puede prestarse para la intromisión sin justificación previa con la intimidad y los efectos personales de cualquier individuo. Por tanto, al eximir de protección constitucional

la utilización indiscriminada del examen de olfato canino, como si se tratara de un supuesto análogo al uso de binoculares sobre un campo abierto, la mayoría confunde y trastoca el alcance de la referida jurisprudencia. Todo ello bajo el pretexto de un balance de intereses que favorece una noción generalizada y estereotipada sobre la lucha contra el crimen.[35]

Sin embargo, nuestra postura no significa que entendamos que el examen de olfato canino no deba ser un táctica investigativa legítima del Estado ni que se requiera obtener una orden judicial previa para todo caso en que se fuera a utilizar la misma. De igual forma, tampoco endosamos la teoría de que la utilización del examen de olfato canino deba limitarse a acelerar el descubrimiento de evidencia que hubiese sido percibida eventual e inevitablemente por la plena percepción del ser humano.

De hecho, somos del criterio que el examen de olfato canino fue una intromisión gubernamental válida en el presente caso, precisamente por las mismas razones

---

[35] La mayoría también enfatiza que en Kyllo fue determinante que el *thermal imager* no era fácilmente accesible y disponible al público, y contrasta ello con la gran accesibilidad de los perros para el público en general. Del mismo modo, en Soto Soto el Tribunal también enfatizó que los binoculares son aditamentos fácilmente accesibles y disponibles al público en general. No obstante, la realidad es que estos perros son incluso menos accesibles que la herramienta tecnológica utilizada en Kyllo. El costo aproximado para adquirir y entrenar un can para fines de detección de sustancias ilegales es de $20,000 a $29,000, mientras que el *Agema Thermovision 210* utilizado en Kyllo y otros productos similares se pueden obtener por una cantidad mucho menor que las referidas unidades caninas. Véanse K-9s -- The cost of starting a K-9 unit, en Police Magazine, 21 de enero de 2004; http://www.opticsplanet.net/heat-seekers-termal-imagers.html.

elaboradas en la Parte V de la Opinión del Tribunal para sustentar la validez de la intervención con el equipaje de los acusados: que el agente del orden público logró articular una **sospecha individualizada previa** de que los acusados estaban involucrados en un esquema de contrabando de sustancias controladas que una vez culminó el examen quedó corroborada.

**III.**

El estándar de sospecha razonable individualizada no es ajeno a nuestro ordenamiento jurídico. Ortiz Irizarry v. D.T.O.P., 164 D.P.R. 361 (2005); Pueblo v. Yip Berríos, *supra*; Pueblo v. Malavé González, 120 D.P.R. 470 (1988). En particular, la sospecha individualizada se refiere a la expectativa de que un individuo está posiblemente involucrado en la comisión de un delito particular. Para determinar que ésta es razonable, se requiere un escrutinio mayor que una mera sospecha generalizada. Véanse Reid v. Georgia, 448 U.S. 438 (1980); Brown v. Texas, 443 U.S. 47 (1979); C.H. Whitebread & C. Slobogin, *supra*, págs. 246-248.

Como reconoce la Opinión del Tribunal, en el contexto de una intervención gubernamental relacionada con una investigación criminal, la sospecha individualizada razonable se debe equiparar a los motivos fundados para un arresto que requiere la Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 11. En esencia, el funcionario del Estado que realiza la intervención debe tener motivos fundados suficientes para entender que el individuo intervenido ha cometido un delito en su presencia, más allá

de una sospecha generalizada. Ello responde a la protección más amplia que provee nuestra Constitución al derecho de intimidad. Véanse Pueblo v. Bonilla, *supra*, pág. 337; Pueblo en interés de N.O.R.,*supra*; Pueblo v. Rivera Colón, *supra*.

En armonía con este precepto, se ha reconocido que **bajo ciertas circunstancias particulares de necesidad especial del Estado** se puede sostener la validez constitucional de un registro sin previa orden judicial al amparo de una causa probable por sospecha individualizada. Por su parte, la razonabilidad de esta intervención se determina a base de un balance de intereses entre los derechos del individuo y el interés del Estado. Pacheco Pietri v. E.L.A., 133 D.P.R. 907 (1993).[36] Además, el propósito de una intromisión a la intimidad en tales circunstancias excepcionales debe estar estrechamente relacionado con la sospecha individualizada que invoca el agente del orden público para llevarla a cabo.[37]

---

[36] Véanse además, Arizona v. Johnson, 129 S.Ct. 781 (2009); City of Indianapolis v. Edmond, 531 U.S. 32 (2000); National Treasury Employees Union v. Von Raab, 489 U.S. 656 (1989); Skinner v. Railway Labor Executives' Assn., 489 U.S. 602 (1989); J. Álvarez González, Análisis del término 1998-99: Derecho constitucional, 69 Rev. Jur. U.P.R. 419, 423-430 (2000).

[37] En ese sentido, conviene señalar que en City of Indianapolis v. Edmond, *supra*, el Tribunal Supremo Federal invalidó unos bloqueos en las carreteras dado que el propósito de los mismos era encontrar drogas mediante el examen de olfato canino en los vehículos detenidos. El Tribunal reiteró la normativa de que un registro es ordinariamente irrazonable en ausencia de una sospecha individualizada. Además, afirmó que los registros sin sospecha individualizada sólo son permisibles cuando existe una necesidad especial más allá de la noción generalizada de la lucha contra el crimen.

De conformidad con lo anterior, somos del criterio que al existir una sospecha individualizada y razonable de que un individuo esconde contrabando en su equipaje, no es necesario que los agentes del orden público obtengan una orden judicial previa para realizar un examen de olfato canino en un área en donde éstos ya tienen derecho a estar. En esos casos pueden concurrir las circunstancias especiales de necesidad del Estado que justifiquen la utilización de dicha técnica investigativa, la cual generalmente constituye una práctica policiaca menos intrusiva que otros registros y allanamientos. Véase W.R. LaFave, *supra*, pág. 540.

En el presente caso, entendemos que dicho estándar debe ser aplicable **tanto al examen de olfato canino como al registro posterior del equipaje en su fondo**. Se desprende del expediente y de la Opinión del Tribunal que el agente Rosado Cintrón había corroborado varias confidencias con su propia observación en el transcurso de una extensa investigación criminal que apuntaban razonablemente a que los acusados estaban involucrados en el trasiego y contrabando de drogas entre los municipios de Culebra y Fajardo. Dado que transcurrieron pocos minutos desde que se recibió la confidencia que posicionó a los acusados en el aeropuerto y los sucesos que culminaron en el registro, es evidente que el agente no tuvo tiempo suficiente para obtener una orden judicial antes de llegar al aeropuerto.[38]

---

[38] A modo ilustrativo, nótese que en el presente caso también concurrieron varias de las circunstancias requeridas para establecer los motivos fundados necesarios y realizar un arresto bajo la Regla 11 de Procedimiento Criminal a base de la confiabilidad de una confidencia. La confidencia condujo

En atención a estas circunstancias excepcionales, la existencia de la mencionada sospecha razonable individualizada en el caso de autos justificó el uso del examen de olfato canino sin la necesidad de que mediara una orden judicial previa. De hecho, y a pesar de sus pronunciamientos innecesarios y contradictorios sobre la naturaleza de esta táctica investigativa, la sección dispositiva de la Opinión del Tribunal coincide claramente con este criterio. En particular, la mayoría expresa con toda razón que **"las circunstancias particulares de necesidad especial fueron ejemplificadas en la sospecha individualizada razonable que anterior al examen del olfato canino poseían los agentes del orden público y que una vez se culminó el examen quedó corroborada"**. Op. del Tribunal, pág. 40. (Énfasis nuestro). Además, la Opinión sostiene precisamente que "la intervención del equipaje **fue razonable al estar directamente relacionada a la previa sospecha individualizada** ... de que el contenido del mismo tenía narcóticos". *Íd.*, págs. 41-42. (Énfasis nuestro).

En esencia, coincidimos con la lógica de ese razonamiento dado que la utilización *per se* del examen de olfato canino en el presente caso constituyó un registro basado en una sospecha individualizada previa. El Ministerio Público logró rebatir la presunción de la irrazonabilidad

---

hacia los acusados en términos de lugar y tiempo, fue corroborada por observaciones del propio agente, y la corroboración se relacionaba con actos delictivos cometidos y en proceso de cometerse. Véanse Pueblo v. Díaz Díaz, 106 D.P.R. 348 (1977); Pueblo v. Acevedo Escobar, *supra.*

del registro en la vista de supresión de evidencia, pues el testimonio del agente Rosado Cintrón demostró que el propósito del examen de olfato canino en este caso se limitó a corroborar la mencionada confidencia. Además, tampoco se trató de una detención irrazonable en contravención a la factura mínima establecida en Terry v. Ohio, 392 U.S. 1 (1968), pues toda la intervención en controversia ocurrió brevemente y medió la sospecha individualizada análoga a la Regla 11 de Procedimiento Criminal, *supra*, que requiere nuestro ordenamiento constitucional.

Por otro lado, y como acertadamente reconoce la Opinión del Tribunal al discutir la doctrina de necesidad especial, debemos recordar que el hecho de que el can haya marcado positivo no es de por sí suficiente ni justifica automáticamente el **registro en su fondo del equipaje** sin orden judicial previa, o sin que concurra alguna de las demás excepciones al registro sin orden. Véanse Op. del Tribunal, págs. 36-37; Arkansas v. Sanders, *supra*; United States v. Chadwick, *supra*. En el supuesto de que concurran tales requisitos y las exigencias de las circunstancias particulares del caso justifiquen tal proceder, se podría prescindir del requisito de orden judicial previa para realizar el registro en su fondo del equipaje en el cual se detectaron sustancias controladas mediante un examen de olfato canino.[39]

---

[39] Específicamente, un registro de esa naturaleza se justifica de manera excepcional: (1) si a la luz de la totalidad de las circunstancias del caso existen motivos fundados suficientes para creer que el equipaje contiene material delictivo; y (2) si las exigencias de las

En otras palabras, aunque –mediante un *dictum* innecesario y confuso– la mayoría sugiere en su discusión anterior a la parte dispositiva del caso que en nuestra jurisdicción existe una amplia autoridad legal para realizar un examen de olfato canino en ciertas circunstancias sin sujeción a un estándar constitucional, de la misma Opinión se desprende que para prescindir del requisito de orden judicial para registrar **el equipaje en su fondo** el Ministerio Público debe establecer, de entrada, la existencia de una sospecha razonable individualizada que constituya la causa probable requerida por el ordenamiento penal más allá de comprobar que el perro marcó positivo.

En este caso, estamos de acuerdo con la Opinión del Tribunal en tanto concluye que la reacción del can al "marcar positivo" tras olfatear los bultos arrojados en el suelo configuró finalmente los motivos fundados necesarios para que se realizara **el registro en su fondo** del mencionado equipaje sin orden judicial previa. En virtud de un segundo balance de intereses, entendemos que esa etapa del registro en controversia –la cual comenzó cuando se abrió el equipaje– se justificó luego de que el examen de olfato canino **corroborara las mencionadas confidencias.** Es decir, las exigencias de las circunstancias particulares de este caso y la existencia de causa probable de que el equipaje registrado contenía sustancias controladas permitieron que

---

circunstancias particulares del caso ameritan tal proceder. Véanse, en ese contexto particular, <u>United States v. Sokolow</u>, 490 U.S. 1 (1989); <u>United States v. Ross</u>, 456 U.S. 798 (1982).

se prescindiera, como cuestión práctica, de una orden judicial en el supuesto de autos. Véase Pueblo v. Acevedo Escobar, *supra*.

En fin, en esta etapa entendemos que el examen de olfato canino y el registro del equipaje en el caso de autos fueron razonables porque el alcance de la intromisión a la intimidad que permitieron dichas tácticas se circunscribía específicamente a corroborar la causa probable basada en la sospecha individualizada que surgía de las numerosas confidencias que el agente Rosado Cintrón había recibido en el proceso investigativo relacionado con un esquema de contrabando de drogas.[40] Por tanto, coincidimos con la mayoría en tanto resuelve, al amparo de la doctrina de necesidad especial y de sospecha individualizada razonable, que procede revocar la sentencia recurrida del Tribunal de Apelaciones que validó la supresión de evidencia en controversia.

**IV.**

Al aplicar dicha doctrina al presente caso, la mayoría reconoce que la intervención en controversia constituyó un registro, e implícitamente sugiere que el mero acto de someter el equipaje al olfato canino de Pirata requirió la

---

[40] Tales hechos guardan cierta analogía con los sucesos de Pueblo v. Acevedo Escobar, *supra*, con la única excepción de que en el caso de autos fue el examen de olfato canino, y no la plena percepción de los agentes, el factor que finalmente corroboró las confidencias que configuraron los motivos fundados suficientes para realizar los arrestos y el registro más profundo del equipaje. En ambos casos, los agentes poseían las confidencias corroboradas que dieron lugar a la sospecha razonable individualizada para justificar la detención inicial de los acusados y la detección subsiguiente de las sustancias controladas.

prevalencia de una sospecha individualizada. Así pues, la contradicción fundamental que surge de la Parte IV de la Opinión del Tribunal recae en su intento de dilucidar en qué momento exactamente comenzó el registro.

Sin embargo, no hay duda de que a la luz de los hechos de este caso y del análisis dispositivo que reseñamos en la sección previa, se hacía **totalmente innecesario** discutir cualquier asunto ulterior sobre la naturaleza de esta táctica investigativa. Sin embargo, en la discusión anterior a la Parte V, la mayoría indica de modo tajante que debemos circunscribir el análisis sobre esta intromisión gubernamental estrictamente a lo resuelto por la jurisprudencia federal sobre el particular. Ello sin tomar en consideración que el efecto práctico de la normativa anunciada sería inherentemente incompatible con el desarrollo del derecho de intimidad y la protección contra registros y allanamientos irrazonables en nuestro ordenamiento constitucional.

En específico, la mayoría sugiere que nos debemos ceñir a la factura mínima federal despuntada por un *dictum* en Place v. United States, 462 U.S. 696 (1983) y la jurisprudencia posterior del Tribunal Supremo de Estados Unidos relacionada a este asunto. De esa forma, la mayoría "incorpora" a nuestra jurisdicción el precepto de que el examen de olfato canino, al tratarse de una técnica investigativa sui géneris, no es un registro a la luz de la

Cuarta Enmienda de la Constitución Federal.[41] En fin, la Opinión del Tribunal en el presente caso elabora el raciocinio de que como dicha táctica investigativa no se considera un registro en el ámbito federal, tampoco lo debe ser al amparo del Artículo II, Sección 10 de la Constitución del Estado Libre Asociado de Puerto Rico.

Nos sorprende el salto lógico de esa conclusión, pues además de ser innecesario para resolver el caso ante nos, pasa por alto que nuestra Carta de Derechos provee una protección más amplia al derecho de intimidad que la Constitución de Estados Unidos. En efecto, el Tribunal ignora la norma histórica de que el derecho constitucional federal reconoce un gran margen para que los tribunales supremos estatales interpreten las garantías de sus respectivas constituciones con mayor amplitud y a la vanguardia de los preceptos enunciados en algunos de los dictámenes del Tribunal Supremo de los Estados Unidos. **Esa es la virtud del federalismo estadounidense tan preciado por sus ciudadanos.** Véase Blassini Cabassa v. DRNA, res. el 7 de agosto de 2009, 2009 TSPR ___ .[42]

---

[41] Del mismo modo, y a pesar de que no guarda relación alguna con este caso, la mayoría cita con beneplácito la Opinión del máximo foro federal en Illinois v. Caballes, 543 U.S. 405 (2005), mediante la cual se resolvió que someter el exterior del vehículo al olfato canino luego de una detención vehicular rutinaria no viola la Cuarta Enmienda.

[42] Véanse, además, Rullán v. Fas Alzamora, 166 D.P.R. 742, 771 (2006); Pacheco Pietri v. E.L.A., supra; López Vives v. Policía de P.R., 118 D.P.R. 219, 226 (1987); Pueblo v. Rivera Colón, supra; Pueblo v. Dolce, supra; E. L. Chiesa, Los derechos de los acusados y la factura más ancha, 65 Rev. Jur. U.P.R. 83 (1996).

De hecho, la filosofía de reduccionismo judicial adoptada por el Tribunal mediante *dictum* no toma en consideración la tradición histórica del federalismo y la interacción dinámica entre el constitucionalismo federal y estatal, la cual ha permitido que la democracia en Estados Unidos sobreviva y prospere por más de dos siglos. En muchas ocasiones, el derecho estatal ha pautado la visión constitucional de vanguardia que posteriormente acoge el Tribunal Supremo de Estados Unidos en un futuro, como parte del "common law" federal. Véase W.J. Brennan, <u>Some Judicial Aspects of Federalism</u>, 52 Rev. Jur. UPR 1, 7-9 (1983).[43]

En lo pertinente al presente caso, la Cuarta Enmienda de la Constitución Federal, según interpretada por el Tribunal Supremo de Estados Unidos, constituye tan solo la protección mínima que Puerto Rico y los estados están obligados a reconocer en lo referente a la garantía contra registros y allanamientos irrazonables. En contraste a la Constitución Federal, nuestra Carta de Derechos protege expresamente la honra, la reputación y la vida privada de las personas. Art. II, Sec. 8, Const. E.L.A., L.P.R.A., Tomo 1. Así, hemos reiterado que "[e]l efecto conjunto de esta cláusula y la garantía constitucional contra registros y allanamientos irrazonables ha sido establecer el derecho a la intimidad

---

[43] Por ejemplo, en <u>Cruzan v. Director</u>, 497 U.S. 261 (1990), el Tribunal Supremo de Estados Unidos acogió la normativa del máximo foro estatal de New Jersey en <u>In re Quinlan</u>, 70 N.J. 10, 355 A.2d 647 (1976), sobre el derecho a rechazar tratamiento médico. Por otro lado, en <u>Kennedy v. Louisiana</u>, 128 S.Ct. 2641 (2008), el Tribunal Supremo Federal aplicó el escrutinio del "consenso nacional" del derecho estatal para declarar inconstitucional la pena de muerte en ciertas instancias.

como uno de los de más alta jerarquía en nuestro ordenamiento". <u>Pueblo v. Bonilla</u>, *supra*; <u>Arroyo v. Rattan Specialties</u>, 117 D.P.R. 35, 64 (1986).[44]

Reconocemos que la factura más ancha de nuestra Carta de Derechos no se debe invocar livianamente. Sin embargo, y contrario a lo que sugiere la Opinión mayoritaria, este Tribunal tiene el deber de utilizar una visión abarcadora y protectora al definir los contornos de los derechos constitucionales de cada individuo, particularmente en lo que respecta a la intimidad y los registros y allanamientos irrazonables. Esta realidad exige que atendamos con tesón cualquier supuesto en que una expectativa razonable de intimidad o los derechos humanos de la ciudadanía se encuentren bajo amenaza.[45]

**V.**

Aclarado lo anterior, no tenemos duda de que lo resuelto por el Tribunal Supremo Federal en <u>Illinois v. Caballes</u>, *supra*, y <u>Place v. United States</u>, *supra*, en cuanto al examen de olfato canino, no es compatible con la primacía que históricamente se le ha reconocido al derecho de intimidad

---

[44] La Comisión sobre la Carta de Derechos de la Convención Constituyente enfatizó la importancia y amplitud de dicha disposición constitucional, al señalar que:

> Se trata de la inviolabilidad personal en su forma más completa y amplia. El honor y la intimidad son valores del individuo que merecen protección cabal [..] **contra injerencias abusivas de las autoridades.** 4 Diario de Sesiones de la Convención Constituyente, pág. 2566. (Énfasis nuestro).

[45] Véanse, por ejemplo, <u>RDT Construction  v. Colón Carlo II</u>, 141 D.P.R. 861 (1996); <u>P.R. Tel. Co. v. Martínez</u>, 114 D.P.R. 328 (1983).

en nuestro ordenamiento constitucional. Como indica la Opinión del Tribunal al citar con aprobación varias decisiones de tribunales estatales y federales, esta jurisprudencia federal **ha permitido validar "el examen de olfato canino de manera indiscriminada tanto en los equipajes como en los automóviles", a pesar de la expectativa razonable de intimidad que un individuo pueda ostentar sobre tales objetos**. Op. del Tribunal, pág. 19. (Énfasis nuestro).

En atención a lo anterior, varios de los tratadistas más eruditos del derecho procesal penal en Estados Unidos han sido contundentes al expresar su preocupación sobre el alcance de esta jurisprudencia federal. Por ejemplo, el distinguido profesor LaFave ha caracterizado la decisión de Caballes como un "oversimplified and underprotective no-search-ergo-no-scope violation rule". LaFave, *supra*, § 9.3 (f), 4ta ed., 2008-09 Pocket Part, pág. 73. Además, este tratadista ha criticado continuamente el "cheque en blanco" que concede la amplia normativa de Place, particularmente porque **se ha probado que estos perros entrenados no son infalibles, lo que significa que su uso podría resultar potencialmente en intromisiones indebidas con la intimidad de personas inocentes.** *Íd.,* § 2.2(g), págs. 532-33.[46]

---

[46] Es por ello que el ex Juez Asociado del Tribunal Supremo Federal David Souter expresó en su disenso de Caballes que

> [o]nce the dog's fallibity is recognized, however, that ends the justification claimed in Place for treating the sniff as *sui generis* under the Fourth Amendment: the sniff alert does not necessarily signal hidden contraband, and opening the container or enclosed space whose emanations

Sin embargo, el raciocinio reduccionista de la mayoría parte de la premisa inarticulada –y desacreditada– de que el derecho de intimidad no está en juego en estos casos porque el examen de olfato canino se dirige únicamente a identificar si el equipaje de una persona contiene o no contrabando; y que un ciudadano no puede albergar expectativa de intimidad alguna sobre el contrabando de sustancias ilegales. Como mencionamos anteriormente, la realidad es que ese fundamento ignora por completo la ciencia y la evidencia estadística disponible sobre los exámenes de olfato canino, la cual apunta a que esta táctica investigativa dista de ser perfecta y su utilización tiende a resultar en "positivos falsos" en muchas ocasiones. LaFave, *supra,* § 2.2(g), págs. 532-33.

En específico, se ha demostrado empíricamente que las unidades caninas no gozan de certeza ni precisión perfecta en su olfato al detectar sustancias controladas, y que cada perro posee un historial de capacidad y habilidad diferente.[47] Ciertamente, las inexactitudes latentes en los

---

the dog has sensed will not necessarily reveal contraband or any other evidence of crime. Illinois v. Caballes, *supra,* (Op. dis. J. Souter).

Véanse además, I. Bennett Capers, Policing, Race and Place, 44 Harv. C.R.-C.L. L. Rev. 43, 64 (2009); C.J. Hunt, Calling in the Dogs: Suspicionless Sniff Searches and Reasonable Expectations of Privacy, 56 Case W. Res. 285 (2005).

[47] Véanse, por ejemplo, United States v. Kennedy, 131 F.3d 1371, 1378 (10mo Cir. 1997); United States v. Scarborough, 128 F.3d 1373, 1378, n.3 (10mo Cir. 1997); United States v. Limares, 269 F.3d 794, 797 (7mo Cir. 2001); Laime v. State, 347 Ark. 142, 159, 60 S. W. 3d 464, 476 (2001); United States v. $242,484.00, 351 F.3d 499, 511 (11mo. Cir. 2003); R. v. Kang-Brown, 2008 SCC 18; R. v. A.M., 2008 SCC 19.

exámenes de olfato canino para detectar sustancias controladas pueden resultar en una intromisión indebida a la intimidad de los ciudadanos, particularmente cuando el perro provee positivos falsos en un porciento desmedido de sus intervenciones. Véanse LaFave, *supra*, §§ 2.2(e), 2.2(g), 9.3 (f); R.E. Myers II, Detector dogs and probable cause, 14 Geo. Mason L. Rev. 1 (2006).

Por ejemplo, en Doe v. Ranfrow, 475 F. Supp. 1012 (N.D. Ind. 1979), *modificado* 631 F.2d 91 (7mo Cir. 1980), un examen de olfato canino realizado en una escuela "alertó" a la policía sobre la presencia de sustancias ilegales en el cuerpo de una niña de 13 años. Luego de que la niña se vaciara los bolsillos, el perro continuó "marcando positivo". En vista de ello, dos agentes del orden público la sujetaron a un registro al desnudo que no reveló la presencia de drogas. Eventualmente se demostró que el perro marcó positivo porque la niña había estado jugando con su perra, la cual se encontraba en celo.[48]

Del mismo modo, en United States v. $ 639,558.00 in United States Currency, 955 F.2d 712 (D.C. Cir. 1992), un examen de olfato canino marcó positivo a cocaína en la maleta de un pasajero, pero no se encontró ninguna sustancia

---

Véase, además, K. Garner et al., Duty Cycle of the Detector Dog: A Baseline Study 12 (Apr. 2001).

[48] Además, en ese caso varios exámenes de olfato canino realizados en la escuela "alertaron" a la policía sobre la presencia de drogas en el cuerpo de otros 50 jóvenes. Sin embargo, sólo 15 resultaron tener sustancias controladas consigo, por lo que los 35 restantes fueron "positivos falsos". Doe. v. Ranfrow, *supra*.

controlada en la misma. Posteriormente se concluyó que el perro marcó positivo porque en el dinero en efectivo del pasajero había rastros diminutos de cocaína. En vista de ello, la Corte de Apelaciones de los Estados Unidos para el Circuito de D.C. indicó que del 75 al 97 porciento del dinero en efectivo en circulación contiene suficiente remanente de cocaína para alertar a un perro entrenado. *Íd.*[49]

Tales incidentes relacionados a la imperfección del examen de olfato canino ejemplifican que su uso tiene el potencial de exponer a todo ciudadano a intromisiones irrazonables y humillantes respecto a su intimidad. Por tanto, no nos podemos unir al criterio mayoritario que avala innecesariamente la utilización indiscriminada y sin control constitucional alguno de estos canes para detectar sustancias controladas.

Más aún, la utilización de estos perros en la proximidad inmediata de las personas tiene un carácter intimidante, por lo que es incuestionable que su uso tiene un efecto intrusivo que podría ser hasta degradante para cualquier individuo. Por ello, el profesor LaFave también ha afirmado que su utilización puede ser ofensiva para algunos, y hasta "reminiscent of the ugliest types of scenes that have occurred in police states." LaFave, *supra,* § 9.3 (f), pág. 81.[50]

---

[49] De hecho, un estudio reciente de la Sociedad Química Americana reveló que el 90% de los billetes de Estados Unidos contiene rastros de cocaína. "Dinero con cocaína", El Nuevo Día, 17 de agosto de 2009, pág. 34.

[50] En Place, la mayoría del Tribunal Supremo Federal enfatizó que el examen de olfato canino en ese caso no conllevó

No hay duda, pues, de que la intromisión a la intimidad que permite la normativa establecida por estos casos en virtud de la Cuarta Enmienda se excede de las exigencias mínimas de ese derecho al amparo de nuestra Carta de Derechos. Al permitir el uso indiscriminado del examen de olfato canino para detectar contrabando en el equipaje –sobre el cual existe una expectativa razonable de intimidad–, se permitiría la intervención con cualquier ciudadano sin justificación previa, con el único propósito de sentar las bases para un arresto o un registro más minucioso sin orden judicial y sin sospecha razonable individualizada.

Evidentemente, tal actuación del Estado **tiene todas las características de un registro**, por lo que clasificarla de otra forma opera en clara contravención a un sinnúmero de precedentes de este Tribunal mediante los cuales hemos ampliado el derecho de intimidad de los puertorriqueños a pesar de que la factura mínima federal permitiría otro curso de acción. Véanse, por ejemplo, Pueblo v. Bonilla, *supra*; Pueblo v. Malavé, *supra*; Pueblo v. Dolce, *supra*. Al amparo de tales casos, en nuestra jurisdicción se considera irrazonable el registro incidental a un arresto del interior

---

ningún tipo de humillación o vergüenza porque no se hizo en un espacio público. Es decir, el grado de intrusión a la expectativa de intimidad al utilizar un examen de olfato canino, y su clasificación como registro *per se*, depende de las circunstancias particulares de cada caso. Sin embargo, y como bien ilustra la Opinión del Tribunal, esta factura mínima federal se ha interpretado para permitir, a modo de excepción, un sinnúmero de intervenciones policiacas sin orden judicial que de otra forma estarían reñidas con la Constitución.

de un vehículo o de una persona, salvo que se haga de manera superficial para hallar armas que pudieran ser alcanzadas por el arrestado o para ocupar evidencia que de otra manera podría desaparecer. Por tanto, mucho más irrazonable sería establecer los motivos fundados para un arresto o registro sin orden a base de un examen de olfato canino realizado de manera arbitraria, el cual se podría llevar a cabo bajo esa premisa contra cualquier peatón en un parque o en una calle pública sin probar sospecha individualizada o sin justificación previa alguna.

A la luz de la factura más ancha que emana de nuestra Constitución, resulta inevitable concluir que el examen de olfato canino es un registro *per se* en el sentido constitucional, que es exactamente lo que sugiere la parte dispositiva de la Opinión del Tribunal al atender los hechos de este caso. Por ello, no avalamos la posición asumida mediante *dictum* de que la utilización de esa herramienta investigativa sobre los efectos personales de un individuo no está sujeta a ninguna de las garantías constitucionales en protección del derecho de intimidad, precisamente porque dicha táctica expone a todo ciudadano a intromisiones indiscriminadas y arbitrarias que podrían dar base a un registro más profundo o hasta al arresto del individuo sin que medie una orden judicial previa.

Claro está, la mayoría hace la salvedad de que **para detener** a una persona con el propósito de someterla a un examen de olfato canino **sí** hace falta probar una sospecha individualizada de que su equipaje contiene sustancias

controladas. Dicha conclusión es forzosa, pues de lo contrario se violaría la factura mínima federal sobre el particular establecida en <u>Terry v. Ohio</u>, *supra*.[51]

De igual forma, la Opinión infiere que se resguarda el derecho de intimidad en nuestro ordenamiento jurídico al ceñir la normativa de <u>Place</u> **al contexto del equipaje.** Ante esa aclaración, la mayoría explica que lo resuelto en este caso no se extiende hacia una persona, un grupo de personas, o cuando dicho examen pueda ser objeto de vergüenza o cause algún inconveniente en el contexto de una investigación particular. Por último, también indica que **hace falta una sospecha individualizada razonable más allá de la marca positiva del can para justificar el registro del equipaje en su fondo.** Véase Op. del Tribunal, págs. 21, 36-7.

Aun así, lo cierto es que la norma anunciada por el Tribunal en el día de hoy tendría el efecto cascada de exponer a cualquier peatón **que no esté en movimiento en un área pública** a que sus efectos personales sean olfateados por un perro grande e intimidante, cuya reacción –la cual se ha probado que puede ser científicamente imperfecta– podría acarrear consecuencias penales. A pesar de las salvaguardas anunciadas por la mayoría, el alcance de la normativa

---

[51] Adviértase, además, que en <u>Place</u> se resolvió que es irrazonable una detención extensa del equipaje para someterlo a dicha prueba en virtud de <u>Terry</u>, por lo que todos sus pronunciamientos sobre el olfato canino constituyeron *dicta*. El máximo foro federal aclaró que la detención sería razonable sólo si es breve **y si existe sospecha razonable de que el pasajero lleva sustancias controladas en el equipaje detenido.** Véanse las Opiniones Concurrentes del Juez Brennan y del Juez Blackmun, <u>United States v. Place</u>, *supra*.

avalada fomenta que los ciudadanos le teman y hasta le huyan a la policía para evitar un malentendido desagradable en un pasadía en el parque, en la playa, o en la plaza pública.

Como imperativo democrático en protección de la intimidad y los derechos civiles de nuestros ciudadanos, no debemos concederle un cheque en blanco al Estado para que se realicen estas intromisiones al azar y sin justificación previa alguna. Lamentablemente, el razonamiento autómata esbozado por la mayoría en el día de hoy para clasificar el examen de olfato canino como un "no registro" sienta las bases para justificar en el futuro otras intervenciones totalitarias ajenas a los principios fundamentales que emanan de nuestra Carta de Derechos.

Por otro lado, y aun bajo la óptica de que el examen de olfato canino constituye un registro, consideramos que su uso puede ser razonable y justificable en las circunstancias apropiadas, sin lacerar las garantías constitucionales de los individuos. De hecho, como hemos señalado, en el presente caso entendemos que el uso de esta táctica investigativa sin orden judicial previa fue razonable, pues se articuló una sospecha individualizada de conformidad con nuestra Carta de Derechos.

En armonía con nuestro criterio, múltiples tribunales estatales han reconocido con posterioridad a Place que el examen de olfato canino constituye un registro en virtud de sus propias constituciones. En esencia, un número significativo de los máximos foros estatales ha rechazado el uso indiscriminado del examen de olfato canino y ha

requerido que para validar el mismo se pruebe, al menos, una sospecha razonable individualizada de que la persona está involucrada en la comisión de un delito relacionado al contrabando de sustancias controladas. Veamos.

**VI**.

En Commonwealth v. Johnston, 530 A.2d 74 (Penn. 1987), el Tribunal Supremo de Pennsylvania resolvió que **al amparo de la disposición constitucional de ese estado** referente a la protección contra registros y allanamientos irrazonables, el examen de olfato canino es un registro en el sentido constitucional. Sin embargo, concluyó que la utilización de los perros en ese caso fue razonable porque se articuló una sospecha individualizada previa y porque la Policía probó que tenía derecho a estar en el lugar donde se realizó el registro.[52] El tribunal explicó que para justificar este tipo de intromisión gubernamental sin orden judicial previa, se debe cumplir con un escrutinio dual de articular una sospecha individualizada razonable y de probar que los agentes del orden público se encontraban legalmente en el lugar donde se realizó el registro.[53]

Por otro lado, en State v. Pellicci, 580 A.2d 710 (N.H. 1990), el Tribunal Supremo de New Hampshire llegó a una

---

[52] Para llegar a dicha conclusión, el Tribunal Supremo de ese estado adoptó la posición del Juez Brennan en la Opinión Concurrente de Place en cuanto a que el uso indiscriminado de los perros permitiría lo que incluso Terry v. Ohio, *supra*, no permite: el registro y allanamiento de propiedad al azar y sin sospecha individualizada alguna.

[53] Al adoptar este estándar, el Tribunal Supremo de Pennsylvania explicó lo siguiente: "it is our view that a free society will not remain free if police may use this, or any other crime detection device, at random and without reason". Commonwealth v. Johnston, *supra.*

conclusión similar, por lo que validó la utilización de un examen de olfato canino para registrar el vehículo de un acusado **en virtud de que existía sospecha razonable** de que éste transportaba sustancias controladas. Al concluir que el referido examen es un registro que se puede efectuar sin orden judicial previa en determinadas circunstancias, dicho foro estatal **aludió expresamente a la factura más ancha que imperaba en virtud de la Constitución de ese estado**. Además, dado que el examen del olfato canino se prestaba para detectar lo que los agentes del orden público no podrían percibir con sus propios sentidos, concluyó que la adopción del estándar de sospecha razonable era un imperativo constitucional. *Íd.*[54]

Asimismo, en People v. Dunn, 564 N.E.2d 1054 (N.Y. 1990), el máximo foro judicial del estado de New York resolvió que aunque el examen de olfato canino no es un registro al amparo de la Cuarta Enmienda de la Constitución Federal, **sí lo es bajo la disposición análoga de la Constitución de ese estado**. Al rechazar la adopción de la normativa de Place en el ordenamiento constitucional estatal, el tribunal concluyó que el hecho de que un procedimiento investigativo pueda revelar evidencia de algún

---

[54] La Opinión del Tribunal hace referencia a Doran v. Contoocook Valley Sch. Dist., 2009 D.N.H. 32 (2009) (no publicada). En dicha sentencia, la corte federal para el distrito de New Hampshire resolvió sencillamente que la utilización del examen de olfato canino en una escuela no constituye un registro bajo la Cuarta Enmienda y la jurisprudencia federal correspondiente. La mayoría no menciona, sin embargo, que la corte de distrito devolvió el caso al tribunal estatal para que se dilucidara la causa de acción bajo el derecho constitucional del estado de New Hampshire.

material delictivo es irrelevante al determinar qué constituye un registro. Por el contrario, sostuvo que el análisis se debe enfocar en si ha ocurrido alguna intromisión con alguna expectativa razonable de intimidad del individuo. Una vez se parte de esta premisa, es inevitable concluir que el examen de olfato canino es un registro en el sentido constitucional. Dicha técnica investigativa permite a la policía obtener información sobre el contenido escondido en un lugar u objeto que goza de una expectativa razonable de intimidad por su relación con un individuo.

Al igual que las decisiones estatales antes reseñadas, el máximo foro de New York adoptó el estándar de sospecha razonable individualizada. Según explicó ese tribunal, resolver lo contrario resultaría en aumentar el riesgo de que los agentes del orden público tengan la vía libre para correr con sus perros e intervenir de manera indiscriminada con los transeúntes y cualquier ciudadano en búsqueda de sustancias controladas. Para dicho foro, "[s]uch an Orwellian notion would be repugnant under our State Constitution", pues ésta protege contra el abuso de discreción de los agentes del orden público al realizar registros y allanamientos. *Íd.*, pág. 1058. A esa misma conclusión han llegado las cortes supremas de muchos estados como —por ejemplo— Minnesota, Colorado, Connecticut y Alaska. Véanse, a modo comparativo, State v. Carter, 697 N.W. 2d 199 (Minn. 2005); People v. Haley, 41 P.3d 666

(Colo. 2001);[55] State v. Waz, 692 A.2d 1217(Conn. 1997); McGahan v. State, 807 P.2d 506, 510 (Alaska Ct. App. 1991).

Aunque es cierto que en estados como Idaho y Montana las cortes se han limitado a acoger la factura mínima establecida en Place,[56] somos del criterio que la jurisprudencia constitucional de estados como New York, Pennsylvania, Connecticut, New Hampshire y Minnesota, con una visión más abarcadora y vanguardista en cuanto a la protección del derecho de intimidad y las garantías constitucionales contra registros irrazonables, es mucho más contundente y persuasiva en el contexto de nuestra jurisdicción. Al concluir que el examen de olfato canino es un registro sujeto al criterio de sospecha razonable individualizada, dicha jurisprudencia es de mayor consonancia con el desarrollo de los derechos individuales al amparo de nuestra Carta de Derechos y nuestra propia jurisprudencia relativa al derecho de intimidad y la protección contra registros irrazonables.

No encontramos razón alguna por la cual debamos considerar que nuestra propia Constitución, la cual reconoce expresa e independientemente el derecho a la intimidad, confiera menos salvaguardas y garantías constitucionales que

---

[55] Nótese que aunque en la Opinión del Tribunal se cita con aprobación lo resuelto por el Tribunal Supremo de Colorado en People v. Wieser, 796 P. 2d 982 (1990), ese mismo foro adoptó precisamente el estándar de sospecha razonable individualizada, por lo que ha resuelto en múltiples ocasiones que la utilización del examen de olfato canino constituye un registro bajo la Constitución de Colorado. People v. Haley, supra; People v. Boylan, 854 P.2d 807 (1993); People v. Unruh, 713 P.2d 370 (1986).

[56] Véanse State v. Scheetz, 950 P.2d 722 (Mont. 1997); State v. Martinez, 925 P.2d 1125 (Idaho 1996).

esos estados en lo que respecta a la utilización indiscriminada, al azar y arbitraria del examen de olfato canino. Una intrusión gubernamental de esta naturaleza sin control constitucional alguno no sólo incumple con las excepciones a un registro sin orden judicial en nuestro ordenamiento, sino que cimienta las bases para mayores intromisiones gubernamentales a la intimidad, en contravención a los derechos fundamentales y democráticos de nuestros ciudadanos.

Por ende, y al igual que los foros estatales en las decisiones antes reseñadas, entendemos que tanto el derecho de intimidad como la protección contra registros irrazonables en nuestra jurisdicción nos obligan a concluir que **la utilización del examen de olfato canino constituye un registro en el sentido constitucional, sujeto al estándar de sospecha razonable individualizada.** Este estándar es precisamente el que acoge la parte dispositiva de la Opinión del Tribunal, por lo que no comprendemos ni se nos ha demostrado cómo la imposición de este criterio objetivo de razonabilidad para regular la intromisión gubernamental que conlleva el examen de olfato canino laceraría los intereses del Estado en la lucha contra el crimen, según sugiere de modo generalizado la Parte IV de la Opinión del Tribunal. De hecho, el estándar de sospecha individualizada es tan pragmático que incluso exime a los agentes del orden público del requisito de orden judicial previa para realizar el registro. Lo único que dicho estándar le impone al Estado es la obligación de que no utilice esta herramienta de manera

arbitraria e indiscriminada, como bien se podría hacer al ceñirnos exclusivamente a la factura mínima federal.[57]

## VII.

Por todo lo antes expuesto, somos del criterio –en esta etapa procesal– que el registro realizado sin orden judicial previa en el caso de autos fue razonable bajo el crisol de la Constitución del Estado Libre Asociado de Puerto Rico. Sin embargo, no podemos unirnos a la Opinión del Tribunal dado que ésta **no toma en consideración que el manejador del can y el analista forense que preparó los Certificados de Análisis Químico Forense no estuvieron presentes ni disponibles para ser contrainterrogados en la vista de supresión de evidencia.** Como consecuencia, la mayoría no aclara que a pesar de que revocamos la supresión de la evidencia en esta etapa de los procedimientos, **la admisibilidad eventual y final de dicha prueba durante el juicio está totalmente sujeta a los parámetros de la Sexta Enmienda de la Constitución Federal, según interpretados**

---

[57] Por otro lado, en caso de un registro de fronteras o de un examen de olfato canino dirigido a la detección de explosivos imperan otras consideraciones. Por ejemplo, en los supuestos en que exista un interés inmediato de seguridad pública relacionado al tráfico aéreo, se puede prescindir del requisito de orden judicial para realizar un registro rutinario del equipaje en un aeropuerto sin sospecha individualizada alguna. Sin embargo, dicha excepción no aplica cuando lo que se intenta promover es un interés generalizado de combatir la introducción de contrabando o de artículos sin pagar arbitrios. Ello sólo lo podría realizar el gobierno federal en las fronteras internacionales. Véanse Torres v. Puerto Rico, 442 U.S. 465, 474-75 (1979); U.S. v. $124,570 U.S. Currency, 873 F.2d 1240 (9no Cir. 1989). Véase, además, a modo ilustrativo, nuestra Opinión de Conformidad en Pueblo v. Cedeño Laclaustra, 157 D.P.R. 743 (2002).

**recientemente por el Tribunal Supremo de Estados Unidos en Meléndez-Díaz v. Massachusetts**, *supra*.

En ese caso, el máximo foro federal resolvió que la admisión **de un certificado de análisis químico forense**, por tratarse de prueba inherentemente testimonial, estuvo reñida con el derecho de confrontación al amparo de la Sexta Enmienda de la Constitución de Estados Unidos dado que el Ministerio Público no presentó al perito que lo preparó como testigo de cargo.[58] Al hacer un análisis formalista de este derecho fundamental, el Tribunal Supremo Federal pautó la normativa de que **el Ministerio Público tiene la obligación de presentar como testigo al perito que preparó los referidos certificados, y que éste debe estar disponible para ser contrainterrogado por la defensa**. Se trata de una aplicación sencilla de Crawford v. Washington, 541 U.S. 36 (2004), en el cual se resolvió que las declaraciones de índole testimonial ofrecidas en contra de un acusado son inadmisibles salvo que el declarante se presente en el juicio, o si no está disponible, que el acusado haya tenido una oportunidad previa de contrainterrogarlo.

Así pues, Meléndez-Díaz requiere el mismo rigor constitucional para admitir finalmente en el juicio la prueba científica presentada por el Ministerio Público, por

---

[58] Dicha cláusula dispone que "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him". Const. EE.UU. Enm. VI. Ese mismo derecho está consagrado en el Artículo II, Sección 11 de nuestra Constitución, al disponer que "[e]n todos los procesos criminales, el acusado disfrutará del derecho … a carearse con los testigos de cargo …". Art. II, Sec. 11, Const. E.L.A., *supra*.

lo que los peritos que manejan la tecnología investigativa utilizada para obtenerla deben estar sujetos a ser contrainterrogados, independientemente de la confiabilidad y precisión técnica que éstos puedan ostentar. Como dice el Juez Antonin Scalia en la referida Opinión, "we would reach the same conclusion if all analysts always possessed the scientific acumen of Mme. Curie and the veracity of Mother Theresa". Meléndez-Díaz v. Massachusetts, *supra*, pág. 2537, n. 6.

Dado que la Opinión del Tribunal en este caso trata a los perros como un instrumento tecnológico análogo al "Breathalyzer" o a un análisis químico de drogas, entendemos que **como condición absoluta** a la determinación de admisibilidad que hace el Tribunal en el día de hoy, el Ministerio Público tendrá que presentar como testigo de cargo al agente Marín, manejador del can que realizó el examen de olfato en controversia. El derecho de confrontación de los acusados respecto al manejador del can se torna más apremiante al tomar en consideración que estos perros no son infalibles ni operan sin margen de error, lo que en ciertas circunstancias podría arrojar dudas sobre la razonabilidad de su utilización.

Por consiguiente, al devolver el caso, instruiríamos al Tribunal de Primera Instancia que Díaz Medina y Bonano Pérez tienen el derecho fundamental de confrontar al manejador y contrainterrogarlo sobre la confiabilidad del historial de precisión de la unidad canina particular que realizó el examen de olfato en controversia. En otras palabras, en el

contexto de una intervención tecnológica de esta naturaleza, el Ministerio Público debe presentar evidencia suficiente del historial de entrenamiento y certeza de la unidad canina que realizó el examen. Además, dado que las declaraciones recogidas en los Certificados de Análisis Químico Forense presentados por el Ministerio Público en la vista de supresión de evidencia constituyen prueba testimonial, sujetaríamos su admisión final a que el perito que los preparó sea presentado como testigo de cargo en el juicio.

Por tanto, resolveríamos que de no testificar en el juicio el manejador del can ni el analista forense que preparó los certificados, la referida prueba debe ser suprimida. Dichas condiciones son necesarias no sólo para salvaguardar el derecho de confrontación de los acusados, sino para probar que no se violentó la protección constitucional contra registros y allanamientos irrazonables que consagra nuestra Carta de Derechos.

A pesar de que en esta etapa el Tribunal resuelve que el registro en controversia fue razonable, adviértase que a través de todo el proceso penal el Estado tiene el peso de probar la razonabilidad del registro y la confiabilidad del examen de olfato canino en controversia.[59] Según hemos

---

[59] Ciertamente, el Ministerio Público logró rebatir la presunción de irrazonabilidad del registro sin orden judicial en la vista de supresión de evidencia. Nótese que la vista de supresión al amparo de la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 234, no equivale a un juicio en su fondo. Además, la utilización de la referida herramienta procesal en este caso se dirigió principalmente "a asuntos de derecho que hay que dirimir como paso previo a la admisibilidad de evidencia". Pueblo v. Blase Vázquez, 148 D.P.R. 618, 633 (1999); Pueblo v. Martínez Torres II, 126 D.P.R. 561, 575 (1990); Pueblo v.

resuelto anteriormente, la resolución negativa o positiva de una moción de supresión no pone fin a la cuestión sobre la admisibilidad o el valor probatorio de la evidencia impugnada. Véase Pueblo v. Hernández Flores, 113 D.P.R. 511 (1982).[60] Como al devolver el caso el Tribunal no condiciona la admisibilidad final de la evidencia en controversia al rigor constitucional antes enunciado, disentimos.

Por último, discrepamos enérgicamente de la normativa expresada por el Tribunal mediante *dictum* en cuanto a que la utilización de un examen de olfato canino no es un registro en el sentido constitucional. Hace apenas unos días, en Blassini Cabassa v. D.R.N.A., *supra*, este Foro invalidó un registro realizado sin orden judicial en una propiedad privada, precisamente al amparo de la amplitud del derecho de intimidad que históricamente se ha reconocido en nuestro ordenamiento jurídico. No comprendemos cómo este mismo Tribunal ahora se niega a reconocer esa misma garantía constitucional a un ciudadano frente a una unidad canina,

---

Rivera Rivera, 117 D.P.R. 283 (1986). En específico, atendimos en esta etapa la controversia de derecho sobre la razonabilidad de utilizar un examen de olfato canino a la luz de una sospecha individualizada previa de que el equipaje de los acusados contenía sustancias controladas.

[60] Al respecto, la profesora Resumil indica que al tratarse de la resolución de una cuestión interlocutoria que incide sobre derechos constitucionales, es permisible volver a plantear la razonabilidad del registro "cuando nuevos hechos o nueva luz sobre la credibilidad de los testigos de cargo u otras materias que surjan en el juicio puedan arrojar dudas sobre la resolución anterior". O. Resumil, Práctica Jurídica de Puerto Rico, Derecho Procesal Penal, Equity, 1990, pág. 323. Véanse, además, E. Chiesa, Tratado de Derecho Probatorio, Tomo II, Publicaciones JTS, págs. 1217-18; E. Chiesa, Derecho Procesal Penal, *supra*, pág. 221.

exponiéndolo a una intromisión gubernamental humillante y potencialmente errónea sin necesidad de que exista una sospecha individualizada previa. Parecería que un cazador de tórtolas en una finca rural a campo abierto goza de mayor protección constitucional contra intrusiones arbitrarias del Estado que un individuo que reposa en la playa o en la plaza pública. Véase Blassini Cabassa v. D.R.N.A., *supra.*

Como se sabe, nuestra Constitución se redactó precisamente en los momentos en que, como señala Trías Monge, "se sentían los primeros ramalazos del macartismo". J. Trías Monge, Historia Constitucional de Puerto Rico, Vol. III, Editorial UPR, 1982, pág. 192. En atención a esa realidad fáctica, el derecho de intimidad está consagrado expresamente en nuestra Constitución, no por mera voluntad o capricho del Comité de Redacción, Estilo y Enrolado de la Convención Constituyente, sino por el mandato democrático del propio pueblo puertorriqueño.

Lamentablemente, la Opinión del Tribunal en el presente caso representa un retroceso histórico en el desarrollo de vanguardia del derecho de intimidad en nuestra jurisdicción, pues invoca un raciocinio que nos recuerda las distopías ficticias de George Orwell y la represión policiaca de los regímenes totalitarios de la historia moderna. Es por ello que no podemos unirnos al intento mayoritario de reducir los derechos civiles y fundamentales de nuestro pueblo que se resguardan en los principios universales y los derechos democráticos de la mayor jerarquía.

Por todo lo anterior, disentimos respetuosamente del proceder del Tribunal en el caso de autos.

Federico Hernández Denton
Juez Presidente